## JAMES McBETH *v.* THE STATE.

1. CRIMINAL LAW — INDICTMENT — MISNOMER. — Where the person upon whom the felony is committed is misnamed in the indictment, and this should be shown in evidence on the trial, for such variance the defendant should be acquitted. 1 Amer. Crim. Law (Wharton), § 257. If the name in the indictment, however, be that by which the person is generly known, though different from the true name, the conviction will be good in a capital case. Meger v. The State, 42 Miss. Rep., 642.

2. SAME — ERRONEOUS INSTRUCTIONS — CASE IN JUDGMENT. — The court instructed the jury, that "It is incumbent on the defendant to show clearly that the illtreatment to which the deceased was subjected was *alone* the cause of the death, and if the wound given was dangerous, then the defendant could not shelter himself under the plea of erroneous

treatment;" *held*, that this charge did not propound the law correctly, that it was too broad in affirming that the defendant must show that ill-treatment was *alone* the cause of the death, and that the last clause did not neutralize the error in the first, and in view of the testimony, may have misled the jury. Arch. Crim. Prac. & Plead., page 261 and notes.

ERROR to the Circuit Court of Capiah County.    Hon. URIAH MILLSAPS, Judge.

The opinion of the court contains a sufficient statement of the case.

*C. E. Hooker*, for plaintiff in error :

The rule as to the designation of the parties injured is much more rigid and inflexible than that with regard to the name and addition of defendant.  A variance or an omission in the name of the person aggrieved, is much more serious than a mistake or addition of the defendant, as the latter can only be taken advantage of by plea in abatement, while the former will be ground for arresting the judgment, when the error appears on the record, or for acquittal when the variance occurs on the trial.   Wharton Am. Cr. Law, 71, 72 and 641; United States v. Howard, 3 Sumn., 12.

The court instructed the jury for the state, that "It is incumbent on the defendant to show clearly that the ill treatment to which the deceased was subjected, was alone the cause of death ; and if the wound was dangerous, then the defendant cannot shelter himself under the plea of erroneous treatment." This instruction did not propound the law correctly.  It tended to mislead the jury and was too broad in its terms.

*Geo. E. Harris*, Attorney General :

A new tral will not be granted by this court merely because the verdict is contrary to the preponderance of evidence, there being positive evidence upholding it.   Lea v. Guice, 13 S. & M., 656.   The question in such cases is not, is the verdict clearly right ? but is it manifestly wrong ?   Waul v. Kirkman, 13 S. & M., 599 ; Drake v. Surget, 36 Miss., 458.   The test is, is there suf-

ficient evidence to support it.    Guion v. Doherty, 43 Miss., 538.
To authorize this court to set aside a verdict which the court
below refused to disturb, the error must be clear; every presump-
tion must be indulged in favor of the verdict.    Peck v. Thomp-
son, 23 Miss., 367 ; 1 Eng. (Ark.), 86 ; 12 Ga., 229 ; Hilliard, N
T., 340.

2.  It is a well established rule in relation to instructions, that
all must be construed together ; and if, when so construed, the
law be correctly expounded, the judgment will not be reversed
because one instruction taken by itself is too broad.    Mask v.
The State, 36 Miss., 77 ; Evans v. The State, 44 Miss., 762.    The
following instruction was given for the defendant : " If the jury
believe from the evidence    *    *    *    that the wound inflicted
was not necessarily mortal, but became so on account of the inex-
pert and improper treatment of an unprofessional and unskilled
person, and that such treatment alone caused death, they should
acquit."    Taking these two instructions together, the jury could
not have been misled ; and hence it was no ground for a new
trial.    Childress v. Ford, 10 S. & M., 25 ; Head v. The State, 44
Miss., 731 ; 31 ib., 350.    Nor will a new trial be granted on the
ground of erroneous instructions if they did not influence the
jury in their verdict.

SIMRALL, J., delivered the opinion of the court :

The plaintiff in error was indicted for the murder of one Wil-
liam Brusher, found guilty of manslaughter and sentenced to the
penitentiary.

Two errors are relied upon in this court, for reversal of the
judgment.

First, overruling the motion in arrest of judgment, because the
person slain was named Bill Williams and not William Brusher.
The motion in arrest of judgment must be founded upon
some reason or ground which appears on the face of the record.
It propounds the proposition of the law to the court, that not-

withstanding the verdict, the sentence of the law cannot be pronounced upon it, because upon the whole record, such judgment would be improper. The cause assigned in this motion, the misnomer or misdiscription of the person slain, did not appear upon the record. It was shown in the evidence.

For wise reasons, the law requires that the name of the person upon whom the felony was committed, or who was injured thereby, should be correctly given in the indictment; and if it shall be shown in evidence on the trial, that the person is misnamed in the indictment, or bears, and is known by a different name from that stated in the indictment, for such variance the defendant should be acquitted. 1 Easts. P. C., 514; 1 Chit. Crim. Law., 216; 1 Amer. Crim. Law (Wharton), § 257. If the name in the indictment be that by which the person is generally known, though variant from the true name, the conviction will be good in a capital case. State v. Gardner Wright, Ohio Rep., 392; 1 Amer. Crim. Law, § 257. See also Ungus' Case, 42 Miss. Rep., 642.

The observance of this rule is necessary, in order that the record of the trial may furnish evidence to protect the defendant against future prosecutions for the same offense.

It was proved on the trial that the person killed by the plaintiff in error, was named Bill Williams, and not William Brusher, as stated in the indictment. There was no counter evidence that he was known and called as well by the former as the latter · name. The verdict on this point was in opposition to the evidence and the instruction of the court.

Counsel for the plaintiff in error insists, especially, that the 8th instruction given for the state is erroneous. It is:

"It is incumbent on the defendant to show clearly that the ill treatment to which the deceased was subjected, was *alone* the cause of the death. And if the wound given was dangerous, then the defendant can not shelter himself under the plea of erroneous treatment."

We think that this charge does not propound the law correctly, and in view of the testimony, may have misled the jury.

' The allegation in the indictment is, that the defendant killed and murdered the deceased. To constitute the crime either of murder or manslaughter, it must be proved that the wounds inflicted by the defendant produced death. The testimony of the medical attendant, Dr. Burnly, was, that death ensued about sixty hours after the wound had been inflicted, from inflammation, as he supposed, in the stomach. The deceased had been cut in the abdomen with an ordinary pocket knife, so that his entrails protruded. The bowels had been replaced, and the outer wound sewed up with a speying needle and flax thread, by one Patrick, shortly after the injury was inflicted. Within a few hours after this the deceased was removed to Dr. B.'s house, who visited him from time to time until his death. The doctor thought that the parts were drawn together too closely, which might have the effect of retarding suppuration and promoting inflammation. Proper medical treatment would have been, to have examined the bowels, dressed any internal wound, then to have replaced the viscera in its natural position in the abdomen, and drawn together and sewed up, but not tightly, the outer wound. It was wrong, also, to have administered chloroform, as was done by Patrick. Dr. Burnly did not rectify the bad surgery of Patrick, because, as one must suppose, the patient could not have been benefited thereby. In his examination in chief, he said that death was caused by the wounds. Speaking more in detail, he said that wounds in the abdomen are dangerous, but not necessarily fatal. He never examined, and therefore did not know whether the stomach or bowels had been cut or not.

If there be misgovernment on the part of the medical attendant, from ignorance, or inattention, this would form no exculpation, if the wound was mortal. Arch. Crim. Prac. & Plead., 262. But if the wound were merely dangerous, and the bad treatment the proximate and immediate cause of the death, the result

would be different.   If in this case death ensued from inflamma-
tion of the stomach or bowels — and the inflammation was the
effect of the wound; was produced by it — then in law, death
was produced by the wounds.

It is a question of fact for the jury, under all the circum-
stances, whether death ensued from the injuries inflicted by the
defendant.

The instruction was too broad in affirming that the defendant
must show that the ill treatment was *alone* the cause of the death.
The last clause of the charge does not neutralize the error in the
first.

If a person injured must die from the effects — but there is a
chance of life by the performance of a surgical operation, but
death immediately follows the operation — here the inflictor of
the injury would be criminally responsible as causing the death.
Arch. Crim. Prac. & Plead., 261, et sequiter and notes.

For these errors the judgment is reversed and venire de novo
awarded.