Harvey v. Wasson.

---

W. W. HARVEY, as Receiver, etc., v. L. C. WASSON et al.

No. 14,543.   (87 Pac. 720.)

SYLLABUS BY THE COURT.

CORPORATIONS—Insolvency—Transfer of Assets—Liability of Directors—Rights of Bona Fide Purchasers. The directors of an insolvent mutual benefit association, whose by-laws required the payment of benefits out of a fund collected for that purpose, acting in good faith and for the best interest of the association, and under the direction of the stockholders, transferred the entire assets of the association to another similar association, without first paying a fixed benefit liability, although there were sufficient funds for that purpose on hand.

*Held:* (1) That such act was a breach of the duty imposed upon the directors by the by-laws of the association, for which they are personally liable to the beneficiary; (2) that such assets cannot be recovered from a *bona fide* purchaser for a valuable consideration.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed November 10, 1906. Modified.

*A. B. Quinton, E. S. Quinton,* and *W. W. Harvey,* for plaintiff in error.

*Loomis, Blair & Scandrett, W. A. S. Bird,* and *Valentine, Godard & Valentine,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: W. W. Harvey, as receiver of the Masonic Mutual Benefit Society of Kansas, a corporation, brought this suit against L. C. Wasson and others as directors of the society, and A. S. Andrews and others as individuals, upon a judgment previously obtained against the society in favor of Harry S. Moulton, to recover a personal judgment against the directors; to have certain lands purchased from the society and their grantees, and now owned by the other defendants, declared to be impressed with a trust to pay the Moulton judgment; to have such conveyances set aside and the land held to be trust property of the society for the payment of the Moulton judgment; and, also, for the possession of certain notes and mortgages which the society had sold and transferred and which are now held by some of the defendants.

It appears that at the time of his death, July 21, 1897, Horace Moulton was a stockholder in the Masonic Mutual Benefit Society and was insured therein in the sum of $2000; that Harry S. Moulton was his beneficiary; and that on January 24, 1898, the beneficiary commenced his action against the society on the beneficiary certificate, which resulted in a final judgment in his favor May, 1902, for $2560.

Harvey v. Wasson.

For several years prior to February 16, 1900, the society had been paying out considerable more money than it was taking in, and during the ten and one-half months immediately preceding this date there had been paid out over $10,000 more than was taken in. At this time the society was the owner of certain real estate, notes, mortgages, and bonds, mentioned in the petition, aggregating about $55,000. After proper notice thereof, the stockholders of the society held a special meeting, February 16, 1900, to determine what should be its further course. It was the expressed wish of a majority of the stockholders, and they requested the directors, to accept a proposition made to the society by the Northwestern Life Assurance Company (hereafter termed the "company") of Illinois. Among many others, this proposition contained provisions to accept the assets of the Kansas society; to take over all its members into the company; to continue their policies in the company on the same terms and conditions as were originally agreed upon by the society; and to assume and pay all of its other liabilities. The request of the stockholders was fully carried out by the directors, and the assets then belonging to the society all passed to the company.

It is unnecessary in this case to determine whether the directors could enter into the agreement with the company. It is sufficient to determine whether they could part with the assets of the society without paying the Moulton benefit.

The assets of the society, according to article 9 of the by-laws, as amended, were divided into three separate funds—the benefit fund, the permanent fund, and the expense fund. Under this article the expense fund could never exceed $1000. Whenever it exceeded this amount the excess should be credited to the benefit fund. It is apparent, therefore, that the $55,000 of assets on hand when the directors transferred them to the company, with the possible exception of $1000 be-

longing to the expense fund, belonged either to the benefit fund or the permanent fund. Article 9 referred to provides that the benefit fund shall be used solely for the payment of benefits upon the death of a member. It also provides that the permanent fund may be used for the payment of benefits, in the event that receipts to the benefit fund shall fall short of meeting such claims as they mature. The by-laws made it the duty of the directors to pay such liabilities on demand, without waiting for an assessment, out of the benefit fund, if sufficient; if not, then out of the permanent fund. Mr. Pomeroy, in treating of the duties of trustees, says:

"Under the general obligation of carrying the trust into execution, trustees and all fiduciary persons are bound, in the first place, to conform strictly to the directions of the trust. This is in fact the corner-stone upon which all other duties rest, the source from which all other duties take their origin. The trust itself, whatever it be, constitutes the charter of the trustee's powers and duties; from it he derives the rule of his conduct; it prescribes the extent and limits of his authority; it furnishes the measure of his obligations." (3 Pom. Eq. Juris., 3d ed., § 1062.)

The directors had no discretionary power to exercise in the payment of benefits. So long as there were any assets in either fund it was obligatory upon them to apply such funds to the payment of benefits upon demand. Moulton's claim had become a fixed liability against the society when the directors parted with the assets, and there were funds on hand to pay it which should have been applied thereto. The fact that the directors acted in good faith and in the manner which in their judgment was for the best interests of all the members will not relieve them from liability to Moulton, whose loss appears to have resulted from their unauthorized conduct.

Upon the proposition that the purchasers of the real and personal property formerly the assets of the Kan-

sas society took such property impressed with a trust in favor of Moulton, the judgment of the trial court must be affirmed. The by-laws of the corporation authorized the board of directors to invest the permanent fund, and left it to their discretion as to how or in what kind of property it should be invested. The directors were executing the purposes of the trust when they invested in the bonds, notes, mortgages and real estate involved in this litigation. Implied in the authority to make such investment is the authority, if occasion demands, to sell the real estate and indorse and transfer the notes, bonds, and mortgages. It appears from the facts, as well as the findings of the court, that the indorsees of the notes and mortgages took them in the usual course of business, for a valuable consideration, and without notice, either actual or constructive, that they were not negotiated by the Kansas society under the authority of its charter. The owners of the real estate appear to have acquired such property by deeds in all respects formal, without actual notice that the Kansas society had not parted with such lands in the proper execution of the trust, and there is nothing in the record that gave them constructive notice to the contrary. It is contended that the owners of the land had constructive notice of the want of authority of the Kansas society to convey the land, which conveyance was by warranty deed, because the chain of title shows that the defendants' grantor took title from the company by deed from its trustee. At most such notice would only require the present owners to know that the trustee was vested with authority to convey, and whether he had such authority could only be litigated by a *cestui que trust,* or some person interested directly in a proper execution of the trust.

The judgment of the district court is affirmed so far as it held that the real estate is not impressed with a trust and that the plaintiff was not entitled to recover the notes, bonds, and mortgages, but so far as it held

that the plaintiff could not recover a personal judgment against the directors the judgment is reversed, and the cause remanded with instructions to enter judgment against such directors. The costs in this court are taxed equally between the directors and the plaintiff in error.

All the Justices concurring.