THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES R. GRAY, Plaintiff in Error.

*Opinion filed October 25, 1911.*

1. CRIMINAL LAW—*it is proper to charge a felony in different ways in different counts.* A person cannot be tried, in one trial, for two or more separate and distinct felonies, but it is proper practice to insert several counts in an indictment charging the felony in different ways, to meet the varying phases of the evidence.

2. SAME—*when court will not quash indictment or put prosecutor to election.* The court will not quash an indictment as charging different offenses or put the prosecutor to his election as to which count he will proceed under, where it may be doubtful if the intention be not to charge the same or cognate offenses growing out of the same transaction.

3. SAME—*the effect where counts for rape charge the offense on different dates.* The fact that the several counts of an indictment for rape charge the offense on different dates does not show affirmatively that they charge as many separate felonies as there are counts, since the time of the offense may be laid at any time previous to the indictment, during the period within which the offender may be prosecuted.

4. SAME—*whether more specific bill of particulars shall be furnished rests in discretion of court.* Whether a more specific bill of particulars shall be furnished than is presented by the prosecution is a matter resting in the sound legal discretion of the court.

5. SAME—*matter of permitting assistance to State's attorney is largely discretionary with court.* It is the duty of the court to prevent oppression of the accused and permit only such assistance to the State's attorney as justice and fairness may require; but such matters rest largely in the discretion of the court, and if the State's attorney is ill and unable to try the case alone, it is not improper to allow his law partner to assist him.

6. SAME—*right of either side to peremptorily challenge a juror before acceptance of panel of four.* Until both sides have accepted the full panel of four jurors either side has a right to peremptorily challenge a juror who has been theretofore tendered to the other side. (*Mayers* v. *Smith,* 121 Ill. 442, distinguished.)

7. SAME—*part of special venire may be examined before all are served.* It is not error to permit the examination of a part of a special venire to proceed before all of the venire are served and present in court and their names placed in the jury box, where the

accused is furnished with a list of the names of the entire venire as well as of those served and in court, and where he does not exhaust all of his peremptory challenges before the jury is accepted.

8. RAPE—*evidence of more than one act of intercourse is admissible.* In a prosecution for rape with the consent of a female under the age of consent more than one act of intercourse with the complaining witness may be proved, not for the purpose of proving distinct offenses, but as showing the relation and familiarity of the parties and as corroborating the testimony of the complaining witness as to the particular act relied on for a conviction.

9. SAME—*admissibility of post-cards sent by accused to prosecuting witness.* In a prosecution for rape without force, unsigned postal cards testified to as being in the handwriting of the accused and sent by him to the prosecuting witness are admissible in evidence as tending to show the relation of the parties.

10. SAME—*when court should compel State's attorney to elect upon which act he will rely.* In a prosecution for rape with the consent of a female under the age of consent, where different acts of sexual intercourse between the accused and the complaining witness have been testified to, the court, upon motion of the accused, should compel the State's attorney to elect upon which act he will rely for a conviction, and, if requested, instruct the jury as to the purpose for which the evidence of the other acts is admissible.

11. SAME—*when alleged misnomer of complaining witness is not fatal.* Proof that the name of the prosecuting witness given in an indictment for rape without force was the name by which she was commonly known is sufficient to support a conviction, even though the evidence shows she is an illegitimate child and that the surname by which she was known was assumed.

12. SAME—*reputation of complaining witness for chastity is not admissible if she is under age of consent.* If the complaining witness in a prosecution for rape is under the age of consent, evidence to show that her reputation for chastity is bad is not admissible.

13. SAME—*when instructions are erroneous as invading province of jury.* In a prosecution for rape, where the guilt of the accused rests solely on the testimony of the complaining witness and several witnesses have testified that her reputation for truth and veracity is bad and no witness has testified to the contrary, it is reversible error to give instructions holding that if the jury believe the complaining witness has testified truthfully as to all matters, then the testimony concerning her reputation for truth and veracity becomes immaterial and need not be considered.

14. PRACTICE—*points raised for first time in reply brief cannot be considered.* Points raised for the first time in the reply brief of

the appellant or plaintiff in error cannot be considered by the Supreme Court.

15. TRIAL—*counsel should not be permitted to state, in his argument, facts outside of record.* It is not allowable for counsel, in the argument to the jury, to state facts which are not in the record.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. OWEN P. THOMPSON, Judge, presiding.

FERNS & SUMNER, (SMITH & WALLACE, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, WALTER J. CHAPMAN, State's Attorney, and FRED H. HAND, for the People.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Charles R. Gray, plaintiff in error, was indicted by the grand jury of Jersey county, at the September term, 1910, for the crime of rape upon one Josephine Miles. He was afterward convicted in the circuit court of that county and his punishment fixed at two years in the penitentiary. After motions for new trial and in arrest of judgment were overruled and judgment entered on the verdict this writ of error was sued out.

The prosecuting witness was fifteen years of age on May 17, 1911. Plaintiff in error, at the time of the alleged offense, was thirty-nine years old. He was unmarried, a piano agent by occupation, and for several years had been making his headquarters at Jerseyville, in said county. He testified that he considered that city his home. The prosecuting witness testified that she became acquainted with the plaintiff in error in May, 1909, while she was helping with housework at the home of Mr. and Mrs. Henry C. Maloney, in Jerseyville; that he brought player pianos there for Maloney to fix, coming about once a week; that along in October of that year she met him in front of English &

251 — 28

Slayton's store, in Jerseyville, in response to a letter she had received from him through the mail requesting her to come; that she went with him to a certain yard which she described, where he had intercourse with her; that she next met him about a week after, by appointment, between seven and eight in the evening, in English & Slayton's store, where he made his headquarters for selling pianos; that he let her in the door, which he then locked, and they had intercourse twice that evening on a leather couch in the back part of the store; that she met him in that store on four or five evenings in October and November, 1909, and had intercourse with him each time; that they also had intercourse once on the ground, near the railroad track; that after this last mentioned occasion he went with her a part of the way to the house where she was working, and while talking on the corner near the house they saw people they knew in the yard and one of the men started towards them; that Gray pulled off his overcoat and started away, saying he did not want them to know who he was; that the man spoke to her as he passed, and she replied. The man in question testified that he was keeping company with a lady for whose mother the complaining witness then worked; that he spoke to Josephine Miles after he left the house and by walking rapidly tried to overtake the man, when the latter started to run. The witness stated that he could not recognize who the man was. The prosecuting witness further testified that she received several letters during October and November of that year from plaintiff in error, but had burned them; that besides these letters she received two unsigned postal cards from him; that she knew plaintiff in error's handwriting and that the cards were in his handwriting. The two cards, both addressed to the prosecuting witness, were introduced, and one of them had, in addition to the address, the words, "Something coming." The witness further testified that shortly thereafter, about Christmas, 1909, she received a pocket-book at the Jerseyville

post-office, wrapped in pasteboard and addressed to her in plaintiff in error's handwriting; that he had previously told her he was going to send her a Christmas present. Another witness testified that she knew the handwriting of plaintiff in error and that these postal cards were written by him. The testimony for the People also tended to show that plaintiff in error had a key to English & Slayton's store at certain times when his headquarters were there. There was also evidence tending to show that plaintiff in error had tried to hire a witness to procure testimony that the prosecuting witness was over sixteen at the date of the alleged offense.

Plaintiff in error denied having had improper relations of any kind with the prosecuting witness. He testified directly contrary to her on all material points. He denied that the postal cards were in his handwriting, or that he had sent them or the pocket-book to her, or had had the meetings with her at any of the places testified to, or had done more than try to ascertain her correct age. Testimony on his behalf was also given by a physician, who stated that he had treated the prosecuting witness in April, 1910, for a venereal disease, and she stated to him that plaintiff in error never had intercourse with her but that a married man was the cause of her trouble. A deputy sheriff also testified for plaintiff in error that in reply to a question of the State's attorney in the latter's office the prosecuting witness said that she did not have intercourse with Charles R. Gray. From the State's attorney's questions, on his cross-examination of this witness, it would seem that there was some misunderstanding on the part of the prosecuting witness as to who was meant by the State's attorney by "Dolly" Gray, she not knowing, or pretending not to know, that it was a nickname for plaintiff in error. It may be noted, however, that the deputy sheriff, immediately after this interview, personally swore to a complaint charging Gray with rape upon said Josephine Miles. Testimony was

introduced to the effect that the reputation of the prosecuting witness for truth and veracity was bad.

Plaintiff in error at the proper time moved to quash the indictment. It is contended that the court erred in overruling this motion. The indictment consisted of four counts. Each count charged the plaintiff in error with having carnal knowledge of the prosecuting witness, and alleged that she was a female child under the age of sixteen years. The second count alleged that the act was done with force and violence. Two of the counts alleged that plaintiff in error was over seventeen years of age. It is insisted that the court should have quashed the indictment because it is apparent on their face that the counts charged separate and distinct felonies. A person cannot be placed on trial for two or more separate and distinct felonies at one trial, but it is proper practice to insert several counts in an indictment charging the felony in different ways, to meet the varying phases of the evidence. The court will not quash the indictment or put the prosecutor to his election as to which count he will proceed under, where it may be doubtful if the intention be not to charge the same or cognate offenses growing out of the same transaction. (*West* v. *People,* 137 Ill. 189; *Kotter* v. *People,* 150 id. 441.) It is argued that as each count charged the felony to have been committed on a different date, it affirmatively appears on the face of the indictment that it charged as many separate and distinct felonies as there were counts. Such is not the law. It is necessary to allege in the indictment a day and year, but the time may be laid at any time previous to the finding of the indictment, during the period within which it may be prosecuted. (Wharton on Crim. Pl. & Pr.—9th ed.—sec. 120; 1 Bishop's New Crim. Proc. sec. 400; 1 Chitty on Crim. Law,—4th Am. ed.—223; *Kettles* v. *People,* 221 Ill. 221; *Koop* v. *People,* 47 id. 327.) Nothing appears on the face of the indictment to indicate that the different counts were not introduced solely for the pur-

pose of meeting the evidence as it might transpire, the charges being substantially for the same offense. The court did not err in overruling the motion to quash the indictment.

Plaintiff in error, before the trial opened, moved for a bill of particulars, which motion was granted and the bill of particulars furnished. Plaintiff in error then made a motion for a more specific bill, which was denied. It is urged that the court erred in this ruling. Whether or not the State shall be required to furnish a bill of particulars in a particular case, and the character of such a bill, rests in the sound legal discretion of the trial court. (*DuBois* v. *People,* 200 Ill. 157; *People* v. *Smith,* 239 id. 91.) It is not shown in what way plaintiff in error was surprised or injured by the failure to furnish a more specific bill of particulars. We do not think there was any abuse of the discretion of the court in its ruling on this question.

Counsel for plaintiff in error, at the beginning of the trial, moved to exclude private counsel (who was the State's attorney's law partner) from assisting the prosecution, on the ground that said counsel was employed and paid by a person unfriendly to plaintiff in error. The State's attorney then stated to the court that he was sick and not able to try the case alone. The court thereupon denied the motion. Such matters rest largely in the discretion of the trial court, to be decided according to the special facts and situation in each case. It is the duty of the court to prevent oppression of the accused and permit such assistance, only, as justice and fairness may require. The general rules regulating this question have been discussed by this court in *Hayner* v. *People,* 213 Ill. 142, and *People* v. *O'Farrell,* 247 id. 44. Under the rules laid down in those decisions the court was justified in denying the motion.

In selecting the jury, counsel for the State examined a panel of four jurors and tendered them to counsel for the plaintiff in error, who excused two and thereafter filled the panel and tendered the four to opposing counsel. The State

then challenged peremptorily one of the two jurors that had been originally tendered to plaintiff in error. This challenge was allowed over objection and is here assigned for error. Sections 21 and 23 of chapter 78 (Hurd's Stat. 1909,) provide that in empaneling jurors in civil or criminal cases they should be passed on and accepted in panels of four. In *Mayers* v. *Smith*, 121 Ill. 442, this court held that after a panel of four had been accepted by both sides but not sworn, neither party could, as a matter of right, peremptorily challenge any of the four, stating, however, that it was not intended to decide or intimate anything in respect to a court's discretion as to the allowance of a peremptory challenge under such circumstances. In that case the full panel had been accepted by both sides and thereafter an attempt was made to peremptorily challenge one of the jurors so accepted. The full panel had not been accepted on both sides in this case, and the ruling in *Mayers* v. *Smith, supra*, is not in point here. Until both sides accept the panel of four, without question the statute permits either side to challenge peremptorily a juror theretofore tendered to the other side.

Before beginning the examination of the regular panel of jurors, the court, being convinced that a jury could not be obtained from the regular panel, directed the clerk to draw a special panel of thirty-six under section 8 of said chapter 78. Thereupon the examination of the regular panel of jurors was taken up. The following morning, on the opening of court, when the regular panel was exhausted, the names of sixteen of the special venire were put in the box and five of the names drawn out and the five called into the jury box. Counsel for plaintiff in error objected to proceeding with the examination of these five until the entire number of the special venire of thirty-six had been served by the sheriff, were in court and their names in the box. It appears from this record that a copy of the full list of thirty-six was given to counsel for plaintiff in error

and also a copy of the names of the sixteen who had been served and were in court. Plaintiff in error, before accepting the entire jury, did not exhaust all of his peremptory challenges. It is not shown that his rights were in any way prejudiced by the method followed in calling the special venire into the box. We are disposed to hold that the court complied substantially with the law on this question in requiring the examination to proceed before the entire special venire of thirty-six had been served and their names placed in the box. *Siebert* v. *People,* 143 Ill. 571; *Wistrand* v. *People,* 213 id. 72.

Plaintiff in error contends in his reply brief that in the examination counsel for the People asked some of the jurors, on their *voir dire,* improper questions. This point having been raised for the first time in the reply and not in the original brief, cannot, under our rules, be considered. *Morton* v. *Pusey,* 237 Ill. 26.

It is further contended by the plaintiff in error that the court erred in permitting proof of more than one act of sexual intercourse with the complaining witness. This evidence was objected to at the time it was offered and an exception taken to the ruling of the court in admitting it. As a general rule, proof of other acts is inadmissible unless they are a part of the *res gestæ.* Certain offenses involving carnal intercourse between the sexes are held, among others, to be exceptions to this general rule. (Wharton on Crim. Evidence,—9th ed.—sec. 35; 2 McClain on Crim. Law, sec. 1124.) Evidence should be admitted "if it has a natural tendency to establish the fact in controversy." (*Commonwealth* v. *Merriam,* 14 Pick. 518; *Lanphere* v. *State,* 114 Wis. 193.) Any circumstance may be put in evidence which may tend to make the proposition at issue either more or less probable. (1 Wharton on Criminal Evidence,—3d ed.—sec. 21; 1 Jones on Evidence, sec. 136.) Whatever is relevant is admissible. (*State* v. *Sebastian,* 81 Conn. 1.) This court held in *Crane* v. *People,* 168 Ill. 395,

that on an indictment for adultery other acts of adultery between the same persons might be proved in explanation of or to characterize the acts of the parties complained of. In *Bolen* v. *People,* 184 Ill. 338, it was held, under an indictment for incest for illicit intercourse between a father and his daughter under fifteen years of age, that acts between the same parties other than the one charged in the indictment could be proven. See, also, as bearing on this question, *People* v. *Ambach,* 247 Ill. 451, *Johnson* v. *People,* 202 id. 53, and *David* v. *People,* 204 id. 479. On principle there can be no distinction, as to the admission of this class of evidence, between a prosecution where the charge is incest or adultery and a prosecution where the charge is rape upon a female child under the age of consent. If such testimony is admissible in the first two classes of cases, logically it must be admissible in the last named class. (*State* v. *Fetterly,* 33 Wash. 59; *State* v. *King,* 117 Iowa, 484; 1 Wigmore on Evidence, secs. 398-402.) This evidence is admissible on the ground that such other illicit or adulterous acts between the parties tend to corroborate as to the particular act charged,—not for the purpose of showing a different offense, but to show the relation and familiarity of the parties. (*Lanphere* v. *State, supra; State* v. *Robinson,* 32 Ore. 43; *State* v. *Stone,* 74 Kan. 489; *People* v. *Abbott,* 97 Mich. 484; *State* v. *Jackson,* 65 N. J. L. 62.) On reason and by the great weight of authority, in a prosecution for rape of a female under the age of consent, other acts of sexual intercourse between the same parties are admissible as corroborating the prosecuting witness' testimony concerning the particular act relied upon for conviction. (*State* v. *Sebastian, supra; People* v. *Mathews,* 139 Cal. 527; 33 Cyc. 1483; 23 Am. & Eng. Ency. of Law,— 2d ed.—882; *Cecil* v. *Territory,* 8 Am. & Eng. Ann. Cas. (Okla.) 457, and note; *People* v. *Molineux,* 62 L. R. A. (N. Y.) 193, and sec. 9 of note; *Sykes* v. *State,* 105 Neb. 815; *State* v. *Witham,* 72 Me. 531.) Whatever may have

been said to the contrary in certain cases,—and there is some conflict of authority on this question,—we deem this to be the correct rule. Under the authorities just cited, the postal cards alleged to be in plaintiff in error's handwriting were admissible as showing the relation of the parties. (*Leedom* v. *State,* 81 Neb. 585.) Acts of intercourse between the accused and other parties than the prosecuting witness are not admissible. *Dalton* v. *People,* 224 Ill. 333; *Janzen* v. *People,* 159 id. 440.

At the close of the evidence counsel for the plaintiff in error moved that the People should elect upon which act of sexual intercourse the prosecution relied for conviction. This motion was overruled. The court has a right to compel an election if two or more offenses are joined to the prejudice of the accused. The time during the trial when this right can be availed of is ordinarily in the discretion of the trial court. (*Schintz* v. *People,* 178 Ill. 320.) It has been said that whether it shall be required at any time pertains to the judicial discretion rather than to absolute law. (1 Bishop's New Crim. Proc. 454, and cases cited.) We are disposed to hold, however, that in this class of cases the better practice is to compel the prosecution to elect upon which act it will rely to convict. (23 Am. & Eng. Ency. of Law,—2d ed.—882, and cases cited; *State* v. *King, supra; People* v. *Mathews, supra; State* v. *Sebastian, supra; State* v. *Robinson, supra.*) Evidence of other acts is admitted, as we have said, not for the purpose of proving different offenses, but to show the relation of the parties and as corroborative of the prosecutrix's testimony concerning the particular act. The court should compel an election and instruct the jury as to the purpose of the admission of such testimony, if requested. On the motion of the plaintiff in error the court should have required the People to elect upon which act they relied for conviction.

The record in this case discloses that the prosecuting witness, Josephine Miles, was an illegitimate child of Effie

Rice, born in 1896, the reputed father being one Britt; that in 1899, when Josephine was three years old, the mother married George Miles; that after said marriage the child was generally known as Josephine Miles. It is insisted by counsel for plaintiff in error that the court erred in refusing to give a peremptory instruction, at the close of the People's evidence and at the close of all the evidence, to find him not guilty because of a variance between the proof and the indictment as to the name of the prosecuting witness. A name is one or more words used to designate a person or thing. The name by which a person is commonly or usually known will be good, even though it differs from the name of baptism. A bastard does not necessarily bear his mother's surname. It will be enough to sustain an averment of a particular name that the person was usually or popularly known by such name. (1 Bishop's New Crim. Proc. sec. 686; Wharton on Crim. Evidence,—9th ed.— sec. 95; *Durham* v. *People,* 4 Scam. 172; *Jones* v. *State,* 65 Ga. 147; *State* v. *Bundy,* 64 Me. 507; *Shannon* v. *People,* 5 Mich. 71; *McBeth* v. *State,* 50 Miss. 81.) The court's ruling on this point was in accordance with the law.

It is further insisted that the trial court wrongfully excluded evidence as to the reputation of the complaining witness for chastity. The general reputation of the prosecutrix as to chastity is admissible when she is above the age of consent,—not as affecting her general reputation for truth and veracity, but because it would be more probable that an unchaste woman would consent to an act of sexual intercourse than one whose character was above reproach. This class of evidence goes to the question of consent, only. When the prosecuting witness is under the age of consent the question of her chastity cannot be material. If she is too young to consent to the intercourse, it is no answer to say that her reputation as to chastity is bad. Both text books and decisions are a unit in holding that all evidence relating to the chastity of the prosecuting witness should

be excluded when she is under the age of consent. (*People* v. *Johnson,* 106 Cal. 289; *State* v. *Whitesell,* 142 Mo. 467; *People* v. *Abbott, supra; State* v. *Smith,* 18 S. Dak. 341; 1 Wigmore on Evidence, sec. 62; 1 McClain on Crim. Law, sec. 460; *State* v. *Roderick,* 14 L. R. A. (Ohio) 704, note *b;* 23 Am. & Eng. Ency. of Law,—2d ed.—872, and cases cited; 33 Cyc. 1481, and cases cited.) The only authority relied on in support of plaintiff in error's contention on this point is *Shirwin* v. *People,* 69 Ill. 55. That case is not in point where the prosecuting witness is under the age of consent and is not in conflict with the authorities already cited, for it was there said (p. 59): "The admissibility of all this class of evidence is placed upon the ground that an unchaste woman would be more likely to consent to the act than a virtuous one, and therefore her previous connection with the accused or her general reputation for want of chastity are proper ingredients in determining the question whether the particular act in controversy was accomplished solely by force or with her virtual consent." If the reputation of the prosecuting witness for chastity were to be held admissible as going to her general credibility, then, logically, such testimony would be equally admissible as to the credibility of any female who might be called to give evidence in any case. The court properly excluded the evidence as to the reputation of the prosecuting witness for chastity.

It is further argued that special counsel for the State, in the closing argument to the jury, made statements, not based on the record, which were prejudicial to plaintiff in error. Among other statements complained of was one to the effect that "this defendant sought to have me as his attorney, and I told him he didn't have money enough to employ me as an attorney." The court sustained objections to this remark and it was withdrawn. It is never allowable for counsel to state, in their arguments to the jury, facts that are not in the record. Such a practice cannot

be too severely condemned. The court properly sustained objections to all departures from this rule. In view of our conclusion on other branches of this case it is unnecessary for us to decide whether the remarks of private counsel were so prejudicial as to require the reversal of this case.

It is further insisted that the trial court committed reversible error in the giving of certain instructions. Instruction 8 for the People states that, as a matter of law, while it was proper for the defendant to offer evidence concerning the general reputation of the complaining witness for truth and veracity, "still if you believe from the evidence, beyond a reasonable doubt, that the complaining witness has testified truthfully as to all matters testified to by her, then the testimony in this case concerning her general reputation for truth and veracity becomes wholly immaterial and need not be considered by the jury." Several witnesses had testified that the reputation of the prosecuting witness for truth and veracity was bad. No witness testified to the contrary. The prosecution's case rested chiefly upon her testimony. It was vital to the case. To say that the testimony as to her reputation for truth and veracity was immaterial was invading the province of the jury. Necessarily the jury, in deciding what weight must be given to her testimony, must take into consideration her reputation for truth and veracity as shown in the record. The credibility of witnesses is a matter exclusively for the jury. (*Roach v. People,* 77 Ill. 25.) It is the duty of the court to determine the competency of testimony but never its credibility. That is for the jury. (*Otmer* v. *People,* 76 Ill. 149; *Haines* v. *People,* 82 id. 430; *Lynch* v. *People,* 33 Colo. 128; *Dunn* v. *People,* 86 Am. Dec. (N. Y.) 319, and note; *State* v. *Johnson,* 16 Nev. 36.) The twenty-sixth instruction for the People is open to the same criticism as the eighth. Both of them invaded the province of the jury as to the weight to be given to the credibility of the prosecuting witness, and these instructions could not but have been

prejudicial to plaintiff in error. The evidence as to the guilt of plaintiff in error was sharply conflicting on material points in the case. It was important in that situation that the instructions should state the law with accuracy. (*Swan* v. *People,* 98 Ill. 610; *Miller* v. *People,* 229 id. 376; *Shaw* v. *People,* 81 id. 150.) The giving of these instructions was reversible error.

Instruction 13 is objected to because it stated that if the jury were convinced beyond a reasonable doubt they should find plaintiff in error guilty, "regardless of what you may think of any of the People's witnesses." Under the reasoning of this opinion as to instructions 8 and 26 the quoted clause from said instruction 13 might also have misled the jury. The last clause of instruction 14 was objectionable for the same reason. That instruction is also objectionable because it does not state that the jury are to be convinced "from the evidence." It left them to draw their conclusions from matters outside of the record, if they desired.

Plaintiff in error further insists that the court erred in giving instruction No. 17 for the People, which states the weight which his testimony is entitled to with the jury. It is, in form, substantially identical with an instruction on the same subject approved by this court in *Henry* v. *People,* 198 Ill. 162, and *Bressler* v. *People,* 117 id. 422.

The third and fourth instructions referred to the force and effect of the circumstantial evidence. It is urged that it was error to give these instructions because there was no circumstantial evidence upon which to base them. We are disposed to think there were certain circumstances in the record bearing on the issues that would justify the giving of these instructions.

Certain other instructions are complained of which were not carefully worded, but we do not think they could have misled the jury, as argued in the briefs.

The conclusion that we have reached renders it unnecessary to pass on the question whether the court erred in refusing to grant a continuance, or on certain other questions raised in the briefs which we do not deem were prejudicial to plaintiff in error.

The judgment of the circuit court of Jersey county will be reversed and the cause remanded to that court for further proceedings not in conflict with the views herein expressed.                                    *Reversed and remanded.*