(No. 14874.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DOMINICK DECINA, Plaintiff in Error.

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

1. CRIMINAL LAW—*what is not a variance as to name in indictment.* There is no variance between the name of the person robbed as alleged in an indictment for robbery and proof that although it is not his correct name it is the name by which he is usually or popularly known.

2. SAME—*when plaintiff in error cannot complain of refusal to give instructions.* The plaintiff in error in the Supreme Court can not complain of the trial court's refusal to give instructions where the abstract does not show at whose instance any of the instructions were given nor who requested the refused instructions.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding.

MILES J. DEVINE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of robbery and sentenced to the penitentiary. He prosecutes this writ of error to review that judgment.

John Ross testified that he conducted a grocery and delicatessen store at 323 South Racine avenue, in Chicago; that he was in his place of business about eleven o'clock on the night of June 30, 1921; that he had just checked over his bills for the month and his cash register, and found that he had in the register $298 in currency, a stack of fifty pennies wrapped in a paper container, and a check; that plaintiff in error and another young man came into his place of business with guns in their hands and ordered him to hold up his hands; that they walked him back to his ice-box, searched him, locked him in the ice-box, took the money from the cash register and left the store; that he broke a glass panel from the ice-box, climbed out, procured his gun and followed the robbers; that he ran down the alley across from his store and saw three boys walking down Jackson boulevard, two blocks away; that they appeared to be dividing something among themselves; that he followed them through alleys and down streets for several blocks; that when he reached the corner of Madison and Racine streets he saw them running east; that he was so exhausted that he fell down; that he then shot at the one who was running toward Ann street; that the shot attracted police officers; that they pursued the running men; that he rose to his feet and followed the men; that he found plaintiff in error in the custody of the officers in a vacant lot back of a church; that the officers told him, in the presence of plaintiff in error, that they had pulled him from underneath a wagon that was stored on this lot; that the officers took from him $50 in paper money, a package containing fifty pennies, and a check; that the check was one Ross had cashed for one of his custom-

ers that morning; that he remembered the check and that it was the same check that was taken from his cash register.

The police officers testified that after the shot was fired they pursued plaintiff in error and others who were running down the alley back of the church; that they ordered them to halt; that the men refused to obey the command and that they fired at them with their revolvers; that plaintiff in error shouted that he was shot and crawled under a wagon; that they pulled him from underneath the wagon; that Ross came running up and said, "That is the man that robbed me;" that they searched him and found on him $50 in currency, a package of pennies and a check, and that Ross said, "That is my money and my check."

Plaintiff in error testified that he had been steadily employed up to the time of his arrest and that he was employed at the time of the trial; that he is not a robber and that he had never been in the store of Ross; that he had never seen him before the time he saw him when he was arrested; that he was on Madison street looking for a taxi-cab when the shooting began and that he ran for shelter to keep from being shot; that he had spent the evening in Jefferson Park with Lydia Pontrelli; that she had sprained her ankle and that he went to Madison street to get a taxi-cab in which to take her home. He admitted that he had $50 with him and that the officers took it. He denied that he had a package of pennies or a check in his pocket, and denied that the officers took the package of pennies and the check introduced in evidence from his pockets. He also denied that he crawled under a wagon or that he was dragged from under the wagon by the officers.

Miss Pontrelli testified that she had known plaintiff in error for four years; that she met him at eight o'clock on the night in question; that they intended to go to a show, but that it was too hot and that they spent the evening in Jefferson Park; that shortly before eleven o'clock she sprained her ankle, and that plaintiff in error left her to

get a taxicab in which to take her home; that she waited for him about half an hour; that he did not return; that she went home by street car, and that she did not know what had become of him until she read of his arrest the next morning. Two neighbors testified plaintiff in error had a good general reputation in the community for honesty.

It is first contended that there is a fatal variance between the name of the person robbed and the person named in the indictment as the one robbed. John Ross testified that his true name was Rossi, but that he had adopted Ross as his name when he went into business and that he was known in the community where he lived and transacted his business as John Ross. It is sufficient to sustain an averment of a particular name that a person is usually or popularly known by such name. (*People* v. *Gray*, 251 Ill. 431.) There was no error in the court's ruling on this point.

It is next contended that the court erred in refusing certain instructions requested by plaintiff in error. The abstract shows that the court gave to the jury seventeen instructions and that eighteen instructions submitted to the court were marked "Refused." The abstract does not show, however, at whose instance any of the instructions were given nor who requested the instructions which were marked "Refused." Plaintiff in error is therefore not in a position to ask this court to consider questions arising from a refusal of the instructions. We have, however, examined the instructions, and are of the opinion that the jury was fully instructed with respect to the law applicable to this case.

The sole remaining question is that the evidence fails to show the guilt of plaintiff in error beyond a reasonable doubt. If the witnesses for the prosecution are to be believed there is no question of the guilt of plaintiff in error. The jury saw and heard these witnesses and gave credit to their testimony. We see no reason whatever for disturbing the verdict of the jury.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*