**People of the State of Illinois, Plaintiff-Appellee, v. H. D. (Rusty) Gill, Defendant-Appellant.**

Gen. No. 69–74.

Third District.

March 31, 1970.

Rehearing denied April 23, 1970.

Theodore Jackson, of East Moline, for appellant.

James N. DeWulf, State's Attorney of Rock Island County, and Walter Braud, of Rock Island, for appellee.

ALLOY, J.

This is an appeal from the conviction of defendant H. D. (Rusty) Gill, under 1967 Ill Rev Stats, c 38, § 16(1) (b) which provides "A person commits theft when he knowingly: . . . (b) Obtains by deception control over property of the owner; . . . ." Defendant was sentenced from two to ten years in the Illinois State Prison following conviction.

The record discloses that early in 1968, Mr. Whiteside, after a conversation with defendant Gill got in touch with four East Moline businessmen to find out if they would be interested in a motel venture in West Branch, Iowa. These four men, Messrs. Jacobson, Polios, VanHoe and Coopman, met with Gill and Whiteside. Defendant Gill was an independent consultant with offices in Tipton, Iowa. Prior to his discussions with the five men referred to, defendant Gill had worked with two East Moline men in establishing a Dutch Inn motel in East Moline. It was shown that the East Moline Dutch Inn motel venture involved an agreement between Gill and other investors which provided that the investors were to furnish $12,500, and if a study showed that the motel was not feasible $12,000 was to be refunded to the investors. The East Moline Dutch Inn motel was approved and the $12,500 went for the purchase of the Dutch Inn franchise. Defendant Gill was paid a finder's fee by Dutch Inn, Inc., with respect to the East Moline motel.

Later, in 1968, after Gill had talked to Mr. Whiteside and explained the previous Dutch Inn project in East Moline, Whiteside had talked with the four East Moline men referred to and they all met with Gill. During the preliminary meetings Gill explained the plan to build the motel and also explained that a feasibility study would be required to determine if the West Branch, Iowa, location was adequate, if land was available, and what it might cost to construct and operate a motel in West

Branch. There were a number of meetings between Gill and the five interested parties in the venture. All of these meetings were held in Illinois. Defendant Gill was asked expressly by Dr. Jacobson, one of the investors, how Gill was going to be paid out of the project. The only answer which Gill gave was that Dutch Inn, Inc. would take care of it. Gill talked with this group of investors about constructing a Dutch Inn motel, and they testified that he indicated to them that he represented Dutch Inns of America motel chain. He explained the project to the prospective investors and also outlined how the East Moline project was handled, using advertising materials provided by Dutch Inns in talking with the new investors. He also told them that a deposit of $12,500 would be needed to get the project under way and that such sum would be used for the purchase of the franchise in a leaseback arrangement from Dutch Inns of America.

The five joint venturers then attempted to incorporate as Par 4 Realty, Inc., but the incorporation was never completed. An attorney, a Mr. Schrager, was retained to represent the investors. After a number of additional meetings with defendant Gill, the group decided to go ahead with the project and each of the four investors sent their attorney $3,125, making a total of $12,500. The fifth investor, Mr. Whiteside, was to perform services as his contribution to the group. Before sending money to Gill, Attorney Schrager requested that Gill advise him of his connection with Dutch Inns of America. Gill wrote the attorney a letter stating that he had authority from Dutch Inns to "arrange, license, and leaseback motel inn projects in the United States of America and Mexico." The attorney then made out a check for $12,500 to an organization designated by Gill called Associated Independent Consultants, Inc., and mailed such check to defendant Gill in Iowa, along with an application for a leaseback and franchise from Dutch

Inns of America. Gill had directed that the check be made payable to Associated Independent Consultants, Inc., and cashed the check on July 5, 1968. Shortly thereafter problems arose with respect to the feasibility study of the proposed West Branch location. The investors then sought return of their money less $500 which, they stated, was to be retained if the project did not go through. The attorney specifically requested that defendant Gill return the money. He was first told by defendant Gill that Dutch Inns had the money. Later defendant Gill told him that he still had the money but that the group owed him for the services. The money was never returned.

At the trial in the cause the testimony of the investors and the attorney Schrager included statements that Gill did not have authority or capacity to accept checks for Dutch Inns of America. Defendant Gill testified that he was to be paid for his services to the group, but that he was not able to give any specific examples of work or services he had performed for the investors. He testified that much of his work for the group would be in the future as the motel project progressed. Defendant Gill also stated that he was authorized by the investors to negotiate not only with the Dutch Inns but also other motel chains. The investors, however, testified Gill talked to them only with respect to a Dutch Inn motel.

The jury found defendant guilty. A post-trial motion was overruled. At a time set by the court for a hearing in aggravation and mitigation, defendant presented a petition for probation. The State's Attorney at the time told the court that it was felt that defendant should be punished by a sentence in the penitentiary. The court then asked "Anything in mitigation?" to which attorney for defendant replied, "Just that my client has never been convicted of a crime before, Your Honor, except for some traffic offenses. This is not a crime of

violence, I know the Court will use its own good judgment to pass sentence on this man for consideration of the crime committed and the offense. Thank you. Mr. Gill come up here please." The court then asked, "Have you anything to say before I impose sentence Mr. Gill?" The defendant answered, "No, sir." The court then sentenced Gill to the Illinois State Penitentiary for not less than two nor more than ten years.

On appeal in this Court, defendant claims that the trial court erred in denying certain portions of defendant's motion for a bill of particulars; that improper testimony by state's witnesses was allowed by the court with respect to the capacity of Gill to accept money for Dutch Inns, Inc.; that the State did not prove the crime as alleged in the indictment, in that it did not prove that the crime occurred in Illinois or the ownership of the money; and also that defendant was not proven guilty beyond a reasonable doubt. The defendant also contends that the trial court abused its discretion in denying probation and in failing to refer the matter to a probation officer for investigation and, likewise, that the sentence imposed was excessive.

■ Defendant Gill had requested a bill of particulars specifying the day, month and year of the offense and the name of the owner of the property. The State furnished a bill of particulars which stated that defendant Gill had led complaining witnesses to believe that he had authority from Dutch Inns, Inc. to accept money, when in fact he did not, and that the offense occurred in East Moline, Illinois, the law offices of attorney Schrager and the Chamber of Commerce Building. Defendant contended that this was still not specific enough and that the court erred in not entering an order requiring a more detailed bill of particulars. As stated in People v. Bain, 359 Ill 455, at 472, 195 NE 42, a bill of particulars is addressed to the sound discretion of the trial court. It is only where it is made to appear

65

that the defendant cannot properly prepare his defense without a bill of particulars that the court will require the prosecution to furnish a bill of particulars. It is pointed out that the object of a bill of particulars is to give defendant notice of the specific charges against him and to inform him of the particular transactions in question so that he may be prepared to make his defense. The effect, therefore, is to limit the evidence to transactions set out in the bill of particulars, as it informed the defendant of the particulars of the offense sufficiently to enable him to prepare his defense. It is apparent from the record that there is no specific date that could be set forth as the exact day when the defendant was alleged to have committed the deceptive practice which resulted in the taking of the money, since the State contended that defendant obtained the money through a series of representations, and then later refused to return the money. The events leading up to the receipt of the money were all part of the crime and tended to disclose that defendant wrongly intended to take the money by deception. The bill of particulars described the way the crime was committed as completely as the State could, and on the basis of the record there was no error in the refusal to require a more detailed bill of particulars under the facts. There was no element of surprise involved in this cause. People v. Gray, 251 Ill 431, 96 NE 268. There was, therefore, no abuse of discretion by the trial judge in refusing a more specific bill of particulars.

Defendant also contends that neither the indictment nor the bill of particulars stated clearly who owned the money. The indictment stated the money was the property of Coopman, Jacobson, Polios, VanHoe and Whiteside, doing business as Par 4 Realty, Inc. This correctly described the situation as the money was the property of the individuals, and since they had never incorporated, they were merely doing business as Par

66

4 Realty, Inc. The only reference to the corporation was the addition of the abbreviation "Inc." There was a showing that there was, in fact, no corporation and that the money did belong to the individuals. There was no variance between the indictment and the proof so that there was no error in this respect (People v. O'Dell, 343 Ill App 395, 99 NE2d 367).

Several of the investors testified at the trial, in answer to questions, that defendant had no authority to accept money from Dutch Inns. Objections were made to such questions. They all answered after objections were overruled that Gill had no such authority. On cross-examination it was shown that the witnesses had no actual, personal knowledge whether Gill was authorized by Dutch Inns to accept the money. Defendant contends that this was error and it was prejudicial to his case as the jury was unduly influenced by such testimony. While it is true that it was improper to allow the witnesses to testify as to Gill's authority to receive money for Dutch Inns, it was brought out in the cross-examination that the witnesses had no basis for their testimony that Gill had no authority, and the testimony of the defendant Gill himself showed he had no authority. His testimony also indicated that he did not intend to turn over the $12,500 to Dutch Inns, since he stated he was investigating several possible projects. Defendant Gill testified that he explained to the investors that he handled the East Moline Dutch Inn project and was paid a finder's fee by Dutch Inns, Inc. The same amount of $12,500 was required in the East Moline project. The record shows sufficient evidence, also, that the same sum of $12,500 was obtained from investors in the case before us in order to obtain a franchise from Dutch Inns. Gill testified that he was to receive the entire $12,500 for his work as a consultant. Thus his testimony established that defendant Gill did not intend to

send the money to Dutch Inns, Inc., as he had led the investors to believe.

On the basis of the record, therefore, the error which was committed was not prejudicial and would not justify a reversal on this ground since there was no affirmative evidence by defendant Gill himself or anyone that he did have authority to act for Dutch Inns, Inc. Gill actually indicated by his testimony that he did not intend to pay the money to Dutch Inns.

On the issue as to whether the State proved the crime as alleged in the indictment under 1967 Ill Rev Stats, c 38, § 1–5, it is provided that an offense can be committed either wholly or partly within the State and that if the offense is committed partly within the State of Illinois, if either the conduct which is an element of the offense or the result which is such an element, occurs within the State, the person could be subject to prosecution in this State even if part of the offense is committed outside the State. The crime of theft in the case before us involves control of the property of the owner by deception in excess of the value of $150. An element of the crime is deception referred to which occurred in the State of Illinois. The meetings with the investors were held in Illinois and it was in Illinois that Gill represented that he was going to try to obtain the Dutch Inns franchise for $12,500. Defendant Gill wrote a letter to Attorney Schrager which was delivered to Schrager's office in Illinois confirming that defendant Gill was authorized to act for Dutch Inns. While the check was mailed to defendant Gill in Iowa as he directed, it was, in fact, deposited as mail in Illinois. A substantial element of the crime charged, therefore, occurred in Illinois, and it was sufficiently shown that the crime was committed in this State.

On the issue of whether defendant was proven guilty beyond a reasonable doubt, the record showed

clearly that defendant told the group of investors that he represented Dutch Inns and was going to take the $12,500, which they were to give to him, and use this to purchase a franchise and leaseback arrangement with Dutch Inns. While the defendant testified that he had told the investors that defendant himself was to receive and retain the entire $12,500 for his services, this was contrary to the testimony of the investors. The jury apparently believed the testimony of the investors. The jury, therefore, was justified, on the record, in the finding that defendant had obtained the money from the investors by deception in violation of the statutory provision.

█ The defendant contends that it was error for the trial court not to refer his petition for probation to a probation officer for investigation (People v. Donovan, 376 Ill 602, 35 NE2d 54). It is clear that applications for probation should not be arbitrarily denied but a trial judge can determine whether it is necessary to refer the petition for probation, for investigation where he knows all of the pertinent facts which might be disclosed by such investigation (People v. Brown, 392 Ill 519, at 523, 64 NE2d 739). While an investigation is the normal and orderly procedure, unless there is a showing that an investigation would have disclosed facts which might potentially change the determination of the trial court on the question of probation, the action of the trial court in not referring the probation petition for investigation would not be considered reversible error. In the cause before us the defendant was given a specified time for a hearing in aggravation and mitigation and the court indicated that defendant's counsel could present anything which he wished to present. Only a short statement was made which indicated that defendant had no criminal record and, thereafter, defendant was given the opportunity to speak, but de-

fendant said nothing. An opportunity was therefore available to defendant and his counsel to communicate any information or details which they felt an investigation might show.

In People v. Smice, 79 Ill App2d 348, 223 NE2d 548 (cited by defendant), it was there shown that the court had no information on which to determine if the request for probation was proper. While the Appellate Court affirmed the conviction it remanded the case to the judge to obtain a probationary or presentence report and with such report to reconsider the petition for probation. In the cause before us, the trial judge was informed of the background of defendant. The court also held a hearing in aggravation and mitigation (which was not done in the Smice case) and gave defendant's counsel and defendant an opportunity to present anything which either counsel or defendant felt might aid the judge in determining what sentence to impose. On the basis of the record, therefore, we do not believe that it was reversible error to omit a probation investigation in this case.

While defendant contends that the sentence imposed in this case was excessive, there is no contention that it does not come within the range of penalties provided for the offense of which defendant was convicted. We have had nothing specific directed to the attention of the court which would justify action by this Court in reducing such sentence or remanding for review and reconsideration of the sentence. The judgment of the Circuit Court of Rock Island County will, therefore, be affirmed.

Affirmed.

RYAN, P. J. and STOUDER, J., concur.