# CHARLESTON.

## STATE v. MAHAMED ALIE.

Submitted September 24, 1918.　　Decided October 1, 1918.

1. CRIMINAL LAW—*Continuance—Sufficiency of Affidavit.*

   An affidavit in support of a motion for a continuance based upon the absence of witnesses, which does not state who the witnesses are, what they will testify, nor that there is a likelihood that their evidence can be procured if a continuance is granted, is not sufficient to sustain such motion.　(p. 603).

2. SAME—*Continuance—Absence of Witness.*

   A motion for a continuance, based upon the ground that the defendant desires to secure alienists to examine him as to his sanity, is properly denied where the affidavit filed in support thereof does not give any reason why such alienists have not been theretofore procured, or show cause why they cannot be procured between the time of the making of such motion and the day set for trial, and does not show that there is a reasonable probability that such alienists, if procured, would testify as desired by the defendant (p. 603).

3. SAME—*Instructions—Necessity of Request.*

   The failure of the trial court to instruct the jury without request, and on his own motion, upon any material matter involved, is no ground for reversal.　(p. 604).

4. INDICTMENT AND INFORMATION—*Name of Deceased.*

   In a prosecution for homicide, if the name of the deceased party as charged in the indictment, and as proved upon the trial is that by which he is usually and commonly known and identified, it is sufficient, even though it is not his real name.　(p. 605).

5. CRIMINAL LAW—*Remarks of Court—Rulings on Evidence.*

   Where evidence is offered which is competent only for one purpose, it is not error for the court in passing upon the admissibility of it to express the opinion in the presence of the jury that it is not competent for another purpose for which it is offered, but that it is competent for the purpose for which he admits it.　(.p. 605).

6. SAME—*Misconduct of Counsel—Harmless Error.*

   In the cross examination of a witness counsel should not indulge in critical or satirical remarks as to the conduct of the witness while testifying, but where no objection is taken by the opposite party to such conduct, and the court immediately requires counsel to desist from making such remarks, and he does so, it is not ground for reversal.　(p. 606).

7. SAME—*Instructions.*

> Where there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested so to do. (p. 607).

8. HOMICIDE—*Instructions—Insanity.*

> Where one charged with homicide testifies that he had been drugged and robbed by the deceased a few days before the alleged homicide, and that he was unconscious of any act that he did from the time he was so drugged and robbed until after the homicide, when he found himself in jail, there is evidence tending to support the defense of insanity at the time of the commission of the homicide, and an instruction presenting the same to the jury should have been given. (p. 608).

Error to Circuit Court, Hancock County.

Mahamed Alie was convicted of murder, and brings error.

*Reversed and remanded.*

*R. M. Brown,* and *Martin Brown,* for plaintiff in error.

*E. T. England,* Attorney General, and *Henry A. Nolte,* Assistant Attorney General, for the State.

RITZ, JUDGE:

On the 18th day of February, 1918, the defendant entered a coffee house in the town of Weirton, operated by Mehmed Kessimakis, drew a pistol from his pocket and discharged three shots therefrom into the body of Moustapha Gumbo, from which the said Moustapha Gumbo died an hour and a half later. After shooting Gumbo the accused immediately left the room by the door at which he had entered, and, pursued by a considerable crowd, ran in the direction of the Ohio River about a half mile away. While being pursued he discharged his pistol once or twice in the direction of the pursuing crowd. When he reached the river bank he was called upon by a police officer to throw down his weapon and surrender. He immediately complied with this request and called upon the officer to protect him. He was indicted on the 11th of March following the homicide and tried on the 21st of March, found guilty of murder in the first degree, and sentenced to be hanged. The accused does not deny the killing as above detailed, nor does he admit it. He states

that on the 15th day of February, three days before the killing, the deceased came to the place where he was staying, and asked him to go to Steubenville, Ohio, for the purpose of having a good time. It is shown that he demurred to this upon the ground that it would cost too much, whereupon the deceased said that he would pay all the expenses, and he thereupon went with Gumbo to Steubenville. He says that after they got to Steubenville, Gumbo took him to a room in a hotel which he informed accused was his place, and there gave him a drink of whiskey, or what he supposed to be whiskey; that in a very few minutes thereafter he lost consciousness, and only came to himself the next morning long enough to know that he had been robbed of $1015.00 which he had on his person, whereupon his mind again became a blank, and he does not know what happened from that time until he discovered himself in jail after the killing, but how long after does not appear. He says that he has no recollection whatever of having shot Gumbo; that he has no recollection of anything that transpired from the time that he discovered the loss of his money, the morning after he was drugged, until he recovered in the jail, after having been arrested for the homicide.

Defendant contends that it was error for the lower court to refuse him a continuance of his case until a subsequent term. The indictment was returned on the 11th day of March, and on that day the prisoner was arraigned, and after pleading not guilty his case was set for trial on the 21st of March. He did not at that time make any objection to the trial of his case being set for the 21st, nor did he ask for a continuance, but on the 16th of March he appeared in court and moved for a continuance of the case, and filed in support of his motion an affidavit of Omar Mohamed. The grounds upon which the continuance was sought, as set forth in the affidavit, were that the defendant's brother desired to make defense for him by procuring alienists to examine him, and that there did not remain sufficient time within which to do that, and also that there were material witnesses living in the state of Massachusetts whose attendance could not be secured within the time allowed. This affidavit does not show

who these witnesses are, what their testimony would be, or
that there is any probability that their evidence would be
secured if the continuance were granted. Neither does the
affidavit present any basis for a continuance of the case to
permit the examination of the accused by alienists. It is not
indicated in the affidavit that the accused is insane or was so
at the time of the homicide. A motion for a continuance
is always addressed to the sound discretion of the court. Of
course this discretion is one not to be abused, but before this
court will reverse a judgment because of the refusal to grant
a continuance it must affirmatively appear that the party
seeking it was injured thereby. As before stated the affi-
davit does not show who the witnesses are whose evidence is
desired; it does not show what their evidence would be if
they were present, so that the court might intelligently pass
upon the materiality thereof; nor is it indicated in the affi-
davit that their evidence could be or would likely be procured
if the continuance were granted. The other ground stated in
the affidavit for the continuance, that the defendant's brother
desired to employ alienists for the purpose of testifying in
his behalf, presents no stronger case. It is not indicated that
alienists could be procured who would testify upon this
question, or that there is a reasonable probability that they
could, and no sufficient reason is shown why they could not
be procured in the ten days allowed by the court for the
preparation of the case for trial. Clearly there was no
abuse of discretion in refusing the continuance upon the
affidavit filed in support of the motion therefor. *State* v.
*Harrison,* 36 W. Va. 729; *State* v. *Maier,* 36 W. Va. 757;
*State* v. *Madison,* 49 W. Va. 96.

Again it is claimed that the court erred in not instructing
the jury as to the different verdicts that could be found by it
under the indictment. No request was made in this regard
by the state or by the defendant. Undoubtedly the court
has a right to instruct the jury in any sort of a case upon
his own motion upon any matter about which he is of opinion
the jury needs enlightenment, but it may be said as a rule
that where there is no request made for an instruction upon
a particular point, even though it would be proper for the

court to give an instruction thereon upon his own motion, it is not error for him not to do so. If the defendant considered it material to have such instruction given he should have requested it. *State* v. *Cobbs,* 40 W. Va. 718; *State* v. *Beatly,* 51 W. Va. 232.

It is also contended that while the deceased is described in the indictment by the name of Moustapha Gumbo, and it is shown by the evidence that that is the name by which he was commonly known in the community at the time of his death, his real name is Moustapha Alie, and that this is a fatal variance. The purpose of naming the deceased party in an indictment, and of proving the name upon the trial, is to prevent the accused from being tried more than once for the same offense. If he should be acquitted upon the charge of killing a particular party, the indictment should describe the party killed with sufficient certainty to enable him to successfully plead his acquital in the event of a subsequent indictment for the same homicide. In this case the indictment describes the dead man by the name which the evidence shows he bore in the community where he was living at the time of the homicide, and whether or not this is his true name is not at all material. He is clearly identified by this name, and this is all that is necessary to fully protect the defendant. 2 Bishop's New Criminal Procedure, p. 537, §686; Wharton on Homicide, p. 862; *Rufus* v. *The State,* 117 Ala. 131; *The People.* v. *Leong Quong,* 60 Cal. 107; *The People* v. *Nellie Woods,* 65 Cal. 121; *Jones* v. *The State,* 65 Ga. 147; *Wilson* v. *The State,* 69 Ga. 224; *Wiggins* v. *The State,* 80 Ga. 468; *Ehlert* v. *The State,* 93 Ind. 76; *Henry* v. *The State,* 113 Ind. 304; *State* v. *Pierre,* 39 La. 915; *State* v. *Bundy,* 64 Me. 507; *State* v. *Peterson,* 70 Me. 216; *Commonwealth* v. *Desmarteau,* 16 Gray, 1; *McBeth* v. *The State,* 50 Miss. 81; *State* v. *Thompson,* 20 N. H. 250; *State* v. *Johnson,* 67 N. C. 55; *Owen* v. *The State,* 7 Tex. App. 329; *Hunter* v. *The State,* 8 Tex. App. 75.

The defendant testified as a witness in his own behalf, and his counsel undertook to show by him that he had been made drunk, drugged and robbed by the deceased at Steubenville three days before the homicide. The introduction of the tes-

timony was objected to, and upon an inquiry by the court defendant's counsel suggested that he desired to introduce this testimony for the purpose of showing that the homicide was committed in the heat of blood. The court responded that the testimony was not competent for that purpose, and if competent at all it was competent as tending to show the defendant's mental condition. It is contended that this remark by the court was error, inasmuch as it expressed the opinion of the court upon the weight of the evidence. It is true the court did express his opinion as to the propriety of the evidence for a particular purpose, and limited it to the purpose for which the court thought it competent, if competent at all. We think the trial judge was quite right in his statement that the evidence was not pertinent to prove that the homicide was committed in the heat of passion. There is not a suggestion in the record of such a defense. All of the evidence shows that the shots were fired deliberately, without any suggestion of a difficulty, and the only justification suggested is mental incapacity at the time. The court very properly stated that this evidence was only proper to show the mental condition of the defendant.

The defendant also urges that the prosecuting attorney during the progress of the trial made improper remarks. While cross-examining the defendant the prosecuting attorney made remarks of an argumentative and critical nature upon the conduct of the defendant while on the witness stand. Neither the defendant nor his counsel objected to them, but the trial judge immediately commanded the prosecuting attorney to desist from such conduct, and he did. It may be said that in the cross-examination of witnesses it is improper for counsel to insert comments critical of the conduct of the witnesses while on the stand. Such remarks, if justified by the evidence, are part of the argument of the case, but where the adverse party does not complain at the time of such conduct, and the court perceives the impropriety of it and immediately corrects it, it does not constitute ground for the reversal of the judgment. If this conduct had been persisted in by the prosecuting attorney, after the

court had directed him to desist, there might be something in the defendant's contention.

Upon the trial the circuit court was requested to instruct the jury to the effect that if they believed the accused was temporarily insane at the time of the commission of the homicide, they should find him not guilty. This instruction was refused, nor was any instruction given covering the attempted defense of insanity. Where evidence is presented tending to support a particular theory of defense, it is the duty of the trial court to give a requested instruction covering such theory. *State* v. *Cobbs,* 40 W. Va. 718; *Vinal* v. *Core,* 18 W. Va. 1. Did the defendant's testimony tend to show that he was temporarily insane at the time of the homicide? This leads to an inquiry as to the legal significartion of the term "insanity." In 14 R. C. L., at page 600, it is said: "The main test which has been practically universally adopted in modern times, and which is applicable to the ordinary case where insanity is interposed as a defense, is what is known as the right and wrong test, or the ability to distinguish between right and wrong. This rule, though adopted many years prior thereto, has nowhere been stated more satisfactorily than in the leading English case known as McNaghten's case, where in answer to a series of questions propounded by the House of Lords to the judges, as to the effect of insanity as affecting responsibility in criminal matters, it was said that the jurors ought to be told in all cases that every man is to be presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defense on the ground of insanity, it must be clearly proved that, at the time of the committing of the act. the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." In Wharton & Stille's Medical Jurisprudence, at §168, it is said: "But in order to be criminally responsible one must have intelligence and capacity to have a criminal intent and purpose; the question to be determined being whether, at the

time of the act, he had mental capacity to entertain a criminal intent, and whether, in point of fact, he did entertain it.'' The doctrine of these texts seems to be fully supported by the authorities, and it may be said that where one, at the time of the commission of a homicide, has not sufficient mental capacity to have a criminal intent and purpose, that is to know what he is doing and that it is wrong, he is in contemplation of law insane. It is in this popular sense that the term is used in law, and not in the strict legal sense. *People* v. *Schmidt*, 216 N. Y. 324, Ann. Cases 1916 A, 978; Note to *State* v. *Marler*, 36 Am. Dec. 402; *Knights* v. *State*, 76 Am. State Rep. 78 and note; Note to *Reg.* v. *Tolson*, 8 Eng. Ruling Cases, 41. If the jury lent credence to the defendant's testimony and believed that he was entirely deprived of his mental faculties at the time of the homicide by the administration of a drug to him by the deceased before that time, then he was at the time insane. It may be that his conduct was entirely inconsistent with this contention, but since a party accused of crime is permitted to testify in his own behalf, the jury alone must say what faith shall be given to his statements. He is entitled to an instruction presenting his defense even though it is supported only by his own testimony. The requested instruction may not be as artistically drawn as it might be. It, however, presents a correct proposition of law applicable to the case under the evidence, is not covered by any instruction given, and to refuse it was error, for which we reverse the judgment, set aside the verdict of the jury and remand the case for a new trial.

*Reversed and remanded.*