# CHARLESTON.

STATE V. HARRY JONES *et al.*

Submitted April 22, 1919.	Decided April 29, 1919.

1. CRIMINAL LAW—*Rulings on Continuance—Discretion—Review.*
   The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made. (p. 87).

2. SAME—*Motion for Continuance—Absent Witnesses—Ruling.*
   Where a motion for a continuance in a criminal case is based upon the absence of a material witness, and it appears from the record that the evidence of the absent witness was merely cumulative, or that his deposition might with reasonable effort have been taken before the trial, though he could not be present thereat, it is not error to refuse a continuance. (p. 87).

3. SAME—*Refusal of Continuance—Prejudice—Reversal.*
   But if the trial is ordered to proceed in disregard of the motion, and results in a judgment adverse to the party who asked for the continuance, and from the whole case it seems reasonably apparent that he was entitled thereto, and that its refusal has worked injury and prejudice to his rights, such adverse action ordinarily is deemed sufficient cause for the reversal of the judgment so obtained. (p. 87).

4. SAME—*Motion for Continuance—Absence of Witness—Affidavit.*
   An affidavit in support of a motion for a continuance in a criminal case based upon the absence of a material witness, whose presence is deemed necessary to the full and proper presentation of affiant's case, must state the name of the witness, and show that due diligence has been exercised to secure his presence at the trial, and that there is a fair probability that his presence or deposition can be secured for a later term; must state with reason-

able definiteness the substance of the testimony the witness is ex-
pected to give at the trial to enable the court to determine its
materiality and the necessity of his presence, and show that he
cannot prove the same facts by any other witness in attendance,
and cannot safely go to trial in the absence of the witness de-
sired.   Affiant may be required to submit to cross-examination
upon the facts therein averred.   (p. 87).

5.  BURGLARY—*Breaking and Entering of Freight Car—Ownership—*
    *Proof.*

    Proof establishing complete, though temporary, control and cus-
    tody by a railroad company of a freight car and its contents is
    sufficient to support an allegation of ownership in such company in
    an indictment charging breaking and entering, or entering with-
    out breaking, such car with intent to steal, and the actual as-
    portation of, its contents.   (p. 90).

6.  SAME—*Breaking and Entering of Freight Car—Variance.*

    Between the averments of an indictment for the burglary of a
    freight car and proof showing the burglary of a box car contain-
    ing the freight stolen there is no such variance as warrants the
    award of a new trial.   (p. 92).

Error to Circuit Court, Marion County.

Harry Jones and others were indicted for breaking and en-
tering. or entering without breaking, a railroad freight car
with intent to steal, etc.   Motions for continuance denied,
and defendant Harry Jones brings error.

*Reversed and remanded.*

*Ernest R. Bell* and *L. C. Musgrave,* for plaintiff in error.

*E. T. England,* Attorney General, and *Henry A. Nolte,*
Assistant Attorney General, for the State.

LYNCH, JUDGE:

The important and the only vital question submitted for
investigation and decision upon this writ concerns adverse
rulings upon defendant's motions: First, to postpone the trial
to the term next succeeding that at which the indictment was
found because of the absence of necessary witnesses cogni-
zant of facts material to establish the innocence of the de-
fendant of the charge preferred against him, and. second, a
continuance of two hours within which to prepare and file
the affidavits of his father and defendant's wife to be read
and considered in support of the first motion.

Our statute governing the granting of continuances in criminal actions is section 1, ch. 159, Code: "When an indictment is found in the circuit court of any county against a person for a felony, the accused, if in custody, or if he appear in discharge of his recognizance or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term."

The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made. *State* v. *Harrison*, 36 W. Va. 729; *State* v. *Madison*, 49 W. Va. 96; *State* v. *Angelina*, 73 W. Va. 146; *State* v. *Duffy*, 75 W. Va. 299; *State* v. *Swain*, 81 W. Va. 278; *State* v. *Alie*, 82 W. Va. 601, 96 S. E. 1011. And if the trial is ordered to proceed in disregard of the motion, and results in a judgment adverse to the party who asked for the continuance, and from the whole case it seems reasonably apparent that he was entitled thereto and that its refusal has worked injury and prejudice to his rights, such adverse action ordinarily is deemed sufficient cause for the reversal of the judgment so obtained. *Buster* v. *Holland*, 27 W. Va. 510; *Cook* v. *Cook*, 63 W. Va. 413; *Doane* v. *Parsons Pulp & Lumber Co.*, 77 W. Va. 454.

One of the grounds for which a continuance is sometimes allowed is the absence of a material witness at the time of the trial, but before that can avail as the basis of a continuance, the party asserting it and relying thereon must establish certain facts to the satisfaction of the trial court. This is generally done through an affidavit setting forth the required facts respecting the absence of the witness, but the affiant may also be required to submit to cross-examination upon the facts therein averred, as was done in this case.

The affidavit must state the name of the witness whose presence is deemed necessary to the full and proper presentation of affiant's case (*Buster* v. *Holland*, 27 W. Va. 510, 535; *State* v. *Madison*, 49 W. Va. 96; *State* v. *Alie*, 82 W.

Va. 601, 96 S. E. 1011) ; and must show that due diligence has been exercised to secure the presence of the witness at the trial, and that there is a fair probability that his presence or deposition can be secured for a later term. *State* v. *Brown,* 62 W. Va. 546; *Cicerello* v. *C. & O. Ry. Co.,* 65 W. Va. 439; *State* v. *Duffy,* 75 W. Va. 299; *State* v. *Farley,* 78 W. Va. 471; *State* v. *Alie,* cited. It must state with reasonable definiteness the substance of the testimony the witness is expected to give at the trial to enable the court to determine its materiality and the necessity of his presence (*Buster* v. *Holland,* cited; *State* v. *Brown,* cited; *State* v. *Farley,* cited; *State* v. *Alie,* cited) ; and must show that he cannot prove the same facts by any other witness in attendance, and cannot safely go to trial in the absence of the witness desired. *Wilson* v. *Kochnlein,* 1 W. Va. 145; *Wilson* v. *City of Wheeling,* 19 W. Va. 323; *Dimmey* v. *Railroad Co.,* 27 W. Va. 32. It follows as a necessary inference from what has been said that the evidence of the absent witness must not be merely cumulative. *C. & O. Ry. Co.* v. *Newton,* 117 Va. 260. *Matoaka Coal Corp.* v. *Clinch Valley Min. Corp.,* 121 Va. 522. And if it appears from the record that the deposition of the witness might have been taken before the trial, though he could not be present at the trial, it is not error to refuse a continuance. *Mate Creek Coal Co.* v. *Todd,* 66 W. Va. 671; *State* v. *Swain,* 81 W. Va. 278.

Except in one particular the affidavit of defendant and the cross-examination to which he was subjected complied with all the requirements of the decisions cited. He gave the names of the absent witnesses, the places of their residences, and the substance of the testimony each of them would give in his behalf, and stated that he could not safely enter upon the trial of the case in their absence because of his inability otherwise to prove the same state of facts, facts which if proved we can see necessarily would have an important bearing upon the question of his guilty participation in the commission of the offense charged in the indictment. For each of these witnesses he caused process to be issued on the third day after the return of the indictment, in time to be served upon them had the officer been able to locate them in

the county, Marion, and at their designated residences in or near Worthington, the place at which the offense was committed. The witnesses, however, were not found, not because they had not resided at or near Worthington, as defendant testified, but because they had changed their places of abode since the commission of the offense charged, whether with or without his previous knowledge does not appear. Some of them, it seems from the proof offered upon the subject, had gone to Harrisville, Ritchie County, or Wheeling, Ohio County, or to the state of Ohio, so that apparently he could not, when he made the affidavit, say definitely whether he would or would not be able to secure their personal attendance at the next ensuing regular term of the court, or in the meantime to take their depositions, the element omitted, inadvertently it may be, from the affidavit and examination.

In this manner obviously appears a strong showing in favor of allowing a postponement of the trial, at least for the two hour period requested for the reinforcement of the testimony offered in that behalf, especially when considered in connection with the other facts and circumstances equally obvious and pertinent when the motions were made, the consideration of which cannot be ignored upon this investigation.

For although the constitutional provision (Art. 3, § 14, Const.) requires that "trials of crimes and misdemeanors * * shall be * * without unreasonable delay," and the statutory provision (section 1, ch. 159, Code) specifies that trials for felony shall be had at the same term at which the indictment is found, "unless good cause be shown for a continuance," they are to be regarded as having both a public and a private or personal aspect or bearing. The first concerns the prevention, in criminal cases especially, of unnecessary delay and the securing of prompt and efficient administration of the criminal law. *Cremeans* v. *Com.*, 104 Va. 860. The second, the vouchsafing to a person charged with violation of the law of a fair and reasonable opportunity to present all the facts material to his defense against accusations preferred against him, however guilty he may be. Embedded in the common-law of the land is the principle of a fair and impartial trial alike in civil and criminal cases. To the

extent reasonably avoidable no innocent person should be permitted to suffer the stigma and punishment incident to an offense of the commission of which he is not guilty, is an equally familiar and often reiterated legal principle. The duty to accord speedy trials is founded in sane reason and sound law, constitutional and statutory. But speed ought not be permitted to work injustice, and lest it should do so, the provisions therefor, as we have seen, are qualified in the constitution by the significant phrase, ''without unreasonable delay,'' and in the statute by the like phrase, ''unless good cause be shown for a continuance.''

On March 13, 1918, two indictments were returned against defendant by the grand jury then in attendance upon the circuit court of Marion County, one against him alone charging an offense popularly known as ''highway robbery,'' the other against him and five others· jointly charging them in the first count with breaking and entering, in the second with entering without breaking, a freight car of the Baltimore & Ohio Railroad Company with intent to steal, take and carry away, and the actual asportation of, the goods and chattels of the Baltimore and Ohio Railroad Company therein found. Though ·challenged by a motion to quash, the legal sufficiency of the indictment is not questioned seriously, nor is it susceptible of reasonable criticism. It seems to have all the averments deemed essential in procedings of this sort. Apparently it contains all the elements required by our decisions in a formal presentation for an offense within the prescriptions of section 12, ch. 145, Code, a railroad car. being one of the structures as to which the offense charged, if committed, subjects the person proved to be guilty to confinement in the penitentiary for not less than two nor more than ten years.

Five days after these indictments were returned, that is, on Monday, March 18, 1918, the trial to determine the guilt or innocence of the defendant on the highway robbery charge began, and it continued thereafter from day to day until a late hour Friday evening, March 22, resulting in his acquittal. This trial required his presence and that of his counsel in court during the week, a fact the consideration of which has, we think, a potential probative value upon this inves-

tigation. For on the next succeeding Monday, March 25, 1918, also began the trial of defendant upon the second indictment, the trial the postponement of which he promptly sought to secure in the manner stated.

Deeming it unnecessary, because of the conclusion reached, to express an opinion upon the question also raised, whether the trial court's action upon the motion for a retrial of the case upon its merits was or was not erroneous, we review the evidence so far only as to enable us to perceive whether, if at all, the legal rights of defendant were prejudiced by the refusal of his motions to continue. An examination for this purpose the decisions cited authorize, and none hold to the contrary. See especially *Doane* v. *Parsons Pulp & Lumber Co.*, 77 W. Va. 454, and *State* v. *Swain*, 81 W. Va. 278.

If defendant was present and participated in the commission of the offense charged, as some of the persons jointly indicted with him swear, the denial of his motions did not seriously invade his personal legal rights to the extent warranting disturbance of the verdict and judgment against him. That he was present he strenuously denies, and that he could have participated in the perpetration of the crime he, his wife, and her father and mother swear was impossible because he and his wife remained constantly at the home of her parents at Rivesville several miles from Worthington, the place of the burglary, from December 1 to January except only in the day time, and then absent for brief periods only. If that is true, defendant could not have been at Worthington in the nighttime of December 17, 1917, the date of the burglary; a fact obviously important to establish by the evidence of disinterested witnesses, if available for that purpose. Jurors look with suspicion upon the exculpatory testimony of kindred alike in civil and criminal cases. To minimize or avoid the effect of prejudicial inference from this source, and to afford reasonable opportunity to procure the attendance of witnesses unbiased and uninfluenced by the ties of blood or marriage was perhaps the prime motive prompting the desire to secure other testimony bearing upon the fact to be established.

Furthermore, the witnesses connecting defendant with the

immediate commission of the felony were of a migratory character and avowedly engaged in many similar felonious acts, for which some of them were, when testifying, either indicted and awaiting trial elsewhere, or convicted and sentenced therefor to confinement in the penitentiary of this state. Besides, they had but recently escaped from the industrial school for boys, and to avoid further detection and detention therein had assumed and were operating under names different from their true names. These circumstances render more obvious the necessity for the exertion of reasonable means to defeat what, for aught we know to the contrary, was a design on their part to associate defendant in the punishment justly due them according to their own admission; and though guilty, as they confess themselves to be, yet he is justly and legally entitled to establish his innocence by recourse to the methods prescribed by law upon full and prompt compliance with the rules recognized as appropriate and applicable in such cases. This we think he did sufficiently at least to warrant the two hours of grace requested.

Respecting ownership of the car and its contents and the proof offered to show ownership, it may not be deemed improper for the purpose of the retrial ordered to indulge in these general observations. In the record is discovered no proof showing with definiteness the real owner of the car entered or of the goods wrongfully taken from it, through the indictment laid the ownership of both in the Baltimore & Ohio Railroad Company. As regards these averments, however, all that the evidence does is to place the car on the side track in the railroad yards at Worthington, a station of the Baltimore & Ohio Railroad Company, thus revealing nothing more than possession and control by that company and not ownership. As to the ownership of the property in the car there is the same indefiniteness. These facts, however, sufficiently appear from the evidence. Articles of merchandise, mainly shoes of different kind and quality purchased by and consigned to the witness Morgan, a merchant engaged in business at Worthington, were a part of the contents of the car, and some but not all of these were found

in it and delivered to him in the usual manner. For the part thereof not so found or delivered he indicated an intention to demand compensation from the railroad company. Thus there is disclosed possession and custody of the car and as a logical sequence the possession and custody of the contents. Necessarily and unavoidably railroads daily and indiscriminately use freight cars not theirs within the ordinary meaning of the term ownership. As apposite here, custody suffices. So that if the Baltimore & Ohio Railroad Company had the car and its contents in its complete, though temporary, control and custody when the offense charged was committed, that fact when proven satisfies all legal requirements in cases of this kind. *Wimbish* v. *State,* 89 Ga. 294; *Smith* v. *State,* 34 Tex. Cr. Rep. 124; *Lamater* v. *State,* 38 Tex. Cr. Rep. 249; 9 C. J. 1064, 1052 note 77 (a). Ownership of a school building burglarized in the nighttime may properly be alleged to be in the janitor of the building, as held in the Lamater Case cited, and the ownership of personal property mentioned in an indictment for burglary may likewise properly be laid in a bailee having possession of the property, as held in the Wimbish Case cited.

Nor do we discover such material variance between the description of the car as given in the indictment and as shown by the evidence as would justify the award of a new trial, if that were the important question for decision. According to the averments of the indictment it was a freight car that was entered, and according to the proof it was a box car. The difference in names has no vital significance. It is too technical to be practical in its application. A freight car is a railroad car adapted to the transportation from one point to another of movable articles of every kind, character and description, and a box car while so used as in this case is at least temporarily a car carrying freight.

For reasons stated our order will reverse the judgment, and remand the case for retrial.

*Reversed and remanded.*