STATE OF WEST VIRGINIA

*v.*

LUTHER A. MILAM

(No. 13618)

Decided July 13, 1976.

*D. Grove Moler and Thomas D. Poe* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *David P. Cleek,* Assistant Attorney General, for defendant in error.

BERRY, CHIEF JUSTICE:

On June 28, 1974, Luther A. Milam shot and killed one Seaboy Gillespie in Mullens, Wyoming County, West Virginia. As a result of his actions, Milam was indicted, tried before a jury, and found guilty of first degree murder with a recommendation of mercy. The Circuit Court of Wyoming County entered a judgment on the jury verdict and Milam now appeals.

There is no material conflict in the facts surrounding the killing of Seaboy Gillespie as those facts were developed during the trial below. The defendant, the decedent and two other elderly men lived in quarters behind the office of a local justice of the peace in Mullens. The defendant had strong religious feelings which were manifested in part by a preoccupation with cleanliness and he regularly cleaned the common areas occupied by the men. Gillespie was very closely attached to a dog which was his constant companion. An antagonism arose between Milam and Gillespie concerning the dog and the mess it made which the defendant was required to clean. Further, the defendant had strong negative feelings about the decedent's drinking habits.

Shortly before the killing, Gillespie's canine companion died of natural causes but Gillespie was convinced that the defendant had placed a curse or hex on the dog. As a result, on the day immediately preceding the killing, Gillespie obtained a gun and laid in wait for Milam. Gillespie was disarmed before he could take action against the defendant. On the following day, the justice of the peace and his secretary heard the sound of a shot from the area occupied by the men. When he opened the door to the adjoining apartment, the justice of the peace witnessed Milam fire a second shot from a pistol into the body of Gillespie as Gillespie was falling forward. Medical evidence indicated that Gillespie had been shot twice with the same weapon, once in the heart and once in the head, and that either shot would have been fatal.

Following his arrest, on motion of defense counsel, concurred in by the prosecuting attorney, the defendant was committed for observation and psychiatric evaluation at the Huntington State Hospital in Huntington, West Virginia. Thereafter, Dr. J. V. Ottaviano, the clinical director of the Huntington State Hospital reported to the Circuit Court of Wyoming County that Milam showed signs of schizophrenia, paranoia and organic brain impairment. Based on his observations, Dr. Ottaviano concluded that the defendant was "able to assist his attorney in his defense." Although he reached this conclusion, in describing Milam's general condition, the doctor noted that "[h]e is quite evasive and talks in generalities .... His memory of recent events is partially reliable but strongly clouded with his delusions. Memory of remote events is quite confused."

Following the first mental examination and before trial, the defendant was referred to a psychiatrist at the Beckley Mental Health Center in Beckley, West Virginia for further evaluation. Based on his examination, Dr. Leslie Borbely, a psychiatrist and clinical director of the Beckley Mental Health Center, reported that Milam was suffering from schizophrenic reaction, paranoid type, mild mental deficiency and organic brain damage. In concluding that the defendant was not competent to stand trial or to assist counsel, Dr. Borbely stated "[t]his man appeared to be quite disorganized and often inappropriate ... and his thought process became disconnected and disorganized. His judgment is severely impaired."

On the date set for trial, counsel for the defendant objected to trial and sought a hearing in accordance with the provisions of *W. Va. Code*, 27-6A-2, as amended, for a determination by the court of the defendant's competence to stand trial. Because the medical reports contained conflicting opinions, the court refused to conduct a hearing and overruled the objection to trial.

At the same time as the motion for a hearing on the defendant's competency, counsel for Milam sought a continuance to obtain information concerning a prior institutional treatment of the defendant. Counsel advised the court that on the night before trial, during a conversation with the defendant, he had discovered that the defendant had received protracted institutional psychiatric care at a facility in Buffalo, New York. Apparently this was the first discovery by counsel or any person of this treatment. Counsel sought time to obtain the records of the defendant's committment to support a proposed insanity defense. Initially, the trial court denied the motion for a continuance but thereafter suggested that a telephone call be made to the New York hospital to determine the relevant circumstances. Upon making the telephone call, the court and counsel were advised that Luther Milam was a patient at the hospital in Buffalo, New York from 1967 to 1970. However, officials at that hospital refused to provide detailed information without proper authorization. Following this exchange, the motion for continuance was overruled; the trial court stating that it would consider any information obtained from Buffalo as "after discovered evidence" on a motion for a new trial in the event that the defendant was convicted.

During the trial, the defendant relied almost exclusively on the defense of insanity. Testifying on behalf of the defendant, Dr. Borbely stated that Milam was suffering from both mental disease and defect and that at the time of the killing of Gillespie he could not distinguish between right and wrong. Dr. Borbely further stated that the defendant did not feel any remorse about killing Gillespie and that he felt morally justified in doing what he had done. Dr. Terisito Alquizola, a psychiatrist from the Huntington State Hospital called as a rebuttal witness on behalf of the State, concurred in the diagnosis that the defendant was suffering from psychosis. Dr. Alquizola concluded that Milam knew right from wrong in a general sense but that he was suffering from a "messianic complex" which led him to

believe that he had a mission to clean the world of filth and that the killing of Seaboy Gillespie was morally right.

After the evidence was concluded and the instructions read, the jury retired for approximately fifteen minutes, after which the foreman of the jury sought advice from the court. At that time, the following occurred:

"The Court: 'Now what is the question, Mr. Wingo?'

"Mr. Wingo: 'We was wanting to know what the sentence would be. We don't want to send him to the pen, in other words. We was wanting something like a sanitarium.'

"The Court: 'Don't explain. Just ask the question you want answered.'

"Mr. Wingo: 'We want to send him up, you know, like for non-capable for what he is doing, you know. In other words, you know ...'"

Based on this exchange, the court, without further explanation, re-read the instruction relating to the possible verdicts to the entire jury and directed it to resume its deliberation. About an hour later, the jury returned a verdict of guilty of murder in the first degree with a recommendation of mercy.

All post-trial motions by the defendant were denied and on April 18, 1975, the defendant was adjudged guilty and sentenced to life imprisonment.

The appellant's petition contains eight assignments of error. Many of these assignments are repetitious and some have been abandoned. The assignments of error, therefore, can be consolidated into four general classifications: (1) The court erred in refusing to conduct a hearing on proper motion for a prior determination of the competency of the appellant to stand trial; (2) the court erred in refusing to grant the appellant's motion for a continuance in order to permit the development of facts relating to the defendant's previous institutional

treatment for a mental disorder; (3) the court erred in giving certain instructions offered by the State and in refusing to give certain instructions offered by the defendant; and, (4) the court erred in refusing to set aside the verdict and grant the defendant a new trial based on the statements made by the foreman of the jury during the course of the jury deliberations.

I

It is fundamental law in this country under Constitutional guarantees and common law principles that no person can be tried for a crime when that person is mentally incapacitated. *State v. Arnold*, _____ W. Va. _____, 219 S.E.2d 922 (1975); *State v. Harrison*, 36 W. Va. 729, 15 S.E. 982 (1892). Although an accused may have been sane at the time of the commission of an offense, he cannot be subjected to trial unless he is able to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceeding against him. *State v. Arnold, supra.*

The Supreme Court of the United States has held that the conviction of an accused when he is legally incompetent violates due process and that State procedures must be adequate to protect this right. *Pate v. Robinson*, 383 U.S. 375, 15 L.Ed.2d 815, 86 S.Ct. 836 (1966). The standards enunciated in *Pate* require a trial court to examine the accused's demeanor, his history of prior mental problems and similar factors in order to determine whether a mental examination should be conducted and a hearing held to determine the accused's competency. These principles were further developed in *Drope v. Missouri*, 420 U.S. 162, 43 L.Ed.2d 103, 95 S.Ct. 896 (1975). In *Drope*, the Supreme Court gave definition to the procedural aspects for determining the mental capacity of an accused to stand trial. The Court indicated that a statutory procedure was constitutionally adequate to protect the defendant's due process right not to be tried while legally incompetent if the statute: (1) provides that a judge shall on motion or on his own initia-

tive order a psychiatric examination whenever he has reasonable cause to believe that the accused has a mental disease which affects his fitness to proceed; (2) specifies the necessary contents of a report of psychiatric examination; (3) requires the trial court to conduct a hearing if there is a conflict in opinion in the reports of the psychiatric examiners; and (4) authorizes the trial court to hold a hearing on its own motion.

The legislature of this State has provided the necessary procedural protections as outlined above by the enactment of Chapter 27, Article 6A of the *Code*. Specifically, *W. Va. Code*, 27-6A-1, *as amended*, provides that when a court of record believes that a defendant in any criminal case may be incompetent to stand trial, it may at any stage of the proceedings order an examination of the defendant to be conducted by one or more psychiatrists or a psychiatrist and a psychologist. A written report of the results of the examination must contain an opinion, supported by clinical findings, relative to the issue of competence to stand trial. Within five days after receiving the report, the trial court must make its own findings on the issue. If, within a reasonable time, the defendant or his attorney requests a hearing on the court's findings, a hearing shall be held by the court within ten days. *W. Va. Code*, 27-6A-2, *as amended*, prescribes the procedure to be followed at the hearing. This section contemplates a complete evidentiary hearing and affords the defendant the right to counsel, the right to an examination by an independent expert of choice and the right to develop all probative evidence on the issue. Following the hearing, the trial court must enter on the record a finding of fact, made upon a preponderance of the evidence, concerning the defendant's competency to stand trial.

In the instant case, the court below initially concluded that there was reason to believe the defendant should be subjected to a medical examination and on two occasions entered an order directing such examination. Although the trial court failed to make any finding based on the reports submitted to it, counsel made the appro-

priate motion for a hearing. We are of the opinion that the defendant was entitled, as a matter of right, to a hearing on his motion in accordance with the statute.

It would appear, even in the absence of the statutes referred to above, that under the facts of the case, the motion for a competency hearing should have been granted. The evidence before the trial court clearly raised a substantial question concerning the competency of the defendant to stand trial. The psychiatrist who first examined the defendant concluded that he was competent to stand trial but stated that he was substantially incapacitated in his ability to recall and describe both recent and past events. He also stated that he was evasive and talked in generalities. The second psychiatrist examined the defendant at a point in time nearer the trial and reported the finding that the defendant's rational processes were impaired and stated his opinion to be that the defendant could not assist counsel.

We are also of the opinion that the fact that the trial court made no independent determination relative to the defendant's ability to assist his counsel and his understanding of the nature of the proceedings constituted non-compliance with the statute. *W. Va. Code*, 27-6A-1, *as amended*, contemplates and the law generally requires that a trial court not simply adopt as his own the recommendations of medical experts, but rather, based on an examination of the totality of the evidence, it should make an independent determination as to whether the defendant is competent to stand trial. Although a psychiatrist has the greater ability to evaluate an individual's mental faculties, a trial judge is best equipped by experience and training to determine upon consideration of the medical evidence, the defendant's demeanor, and the representations by defense counsel concerning his client's mental condition, whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings.

## II

The request by the defendant for a continuance in order to allow him time to obtain information and medical records from a state mental institution in Buffalo, New York where he had been treated from 1967 to 1970, was necessary for an adequate presentation of his defense of not guilty by reason of insanity. The fact that the defendant had received treatment in the mental institution did not come to the attention of his attorney until the evening before the trial and the motion for a continuance was immediately made to the court on the following morning.

The granting or denial of a motion for continuance rests in the sound discretion of the trial court and the refusal to grant such continuance constitutes reversible error only where discretion is abused. *State v. Chaffin*, W. Va., 192 S.E.2d 728 (1972); *State v. Simmons*, 130 W. Va. 33, 42 S.E.2d 827 (1947); *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919); *State v. Alie*, 82 W. Va. 601, 96 S.E. 1011 (1918). This Court has held that it is an abuse of discretion to refuse a continuance to allow a defendant to obtain evidence which is critical to his defense, the existence of which was discovered only shortly before trial. *State v. Skinner*, 101 W. Va. 632, 133 S.E. 371 (1926).

The use and reference to prior medical history and records by a psychiatrist in making a psychiatric diagnosis of one charged with a criminal offense, and the probative value thereof is acknowledged in *State v. Myers*, _____ W. Va. _____, 222 S.E.2d 300 (1976). The information concerning the defendant's treatment at the New York mental hospital had a direct bearing on the defense of insanity and would have been important to the psychiatric evaluation of the defendant and testimony by the defense psychiatrist and for cross-examination of the State's psychiatrist. In addition, the history would have given the court additional valuable background for a more informed determination of the threshold ques-

tion of the defendant's competency to stand trial. *State v. Arnold, supra.*

We note in passing that the court below, in refusing to grant the continuance to obtain the hospital records, observed that the defendant, if convicted, could submit the information later in support of a motion for a new trial based on after-discovered evidence. In fact, such a motion would have been improper inasmuch as counsel knew of the defendant's institutional treatment before trial. By definition, a new trial cannot be granted on the grounds of after-discovered evidence unless the evidence was discovered subsequent to the trial. *State v. Hamric,* 151 W. Va. 1, 151 S.E.2d 252 (1966).

### III

The defendant assigns numerous errors relative to the instructions offered by the State and given over objection and to instructions offered by the defendant and refused by the trial court.

State's Instruction No. 3, a general instruction describing several aspects of the case, was objected to by the defendant because it did not negative the defense of insanity. Two factors compel our rejection of the defendant's challenge. First, State's Instruction No. 5 specifically stated that the jury must find the killing to "have been wilful, deliberate, and premeditated" in order to return a verdict of murder in the first degree. We have previously held that similar words effectively negative mental incapacity on the part of the defendant at the time of an offense. *State v. McCauley,* 130 W. Va. 401, 43 S.E.2d 454 (1947). Further, State's Instruction No. 7 and Defendant's Instruction Nos. 7 and 8, all of which adequately instruct the jury on the defense of insanity, must be read together with the other instructions given in the total charge. When the instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing the verdict.

*State v. Slider,* W. Va., 196 S.E.2d 85 (1973); *State v. Harlow,* 137 W. Va. 251, 71 S.E.2d 330 (1952).

State's Instruction No. 7 contained language which advised the jury that a mental disease or defect must amount to more than a delusion in order to constitute the basis of a finding of not guilty by reason of insanity. The appellant argues that the reference to "delusion" is both confusing and constitutes an improper statement of the law governing the insanity defense. It may well be that this reference to a symptom of severe mental disease is confusing and is not within the scope of the definition of mental disease which we approved in *State v. Grimm,* W. Va., 195 S.E.2d 637 (1973). However, there was no objection by the defendant to this language at the time of trial and we will not consider an objection to instructions in the first instance before this Court. *C.f., State ex rel. Morris v. Mills,* W. Va., 203 S.E.2d 362 (1974); *Hall v. Nello Teer Co.,* W. Va., 203 S.E.2d 145 (1974).

The contention that it was error to refuse Defendant's Instruction No. 1 is well taken. This was the only instruction advising the jury that the defendant was presumed to be innocent. A criminal defendant is entitled, as a matter of right, to an instruction to the jury that he is presumed to be innocent of the crime for which he is charged, and it is reversible error to refuse to give such an instruction unless such statement is contained in other instructions. *State v. Pietranton,* 140 W. Va. 444, 84 S.E.2d 774 (1954); *State v. Foley,* 131 W. Va. 326, 47 S.E.2d 40 (1948).

There is no merit to the contention that it was error for the court to refuse Instruction No. 4 offered by the defendant. This instruction which described the degrees of homicide was merely a duplication of a more comprehensive instruction dealing with the same point given by the court in State's Instruction No. 9.

Instruction No. 5, offered by the defendant and refused by the court, sought to have the jury advised that

the State had the burden of proving beyond a reasonable doubt that he was sane at the time of the commission of the offense. While apparently some jurisdictions, notably some federal courts, follow the rule stated in Defendant's Instruction No. 5, *Annot.*, 17 A.L.R.3d 146 (1968), this State is firmly committed to the rule that the defendant is required to prove by a preponderance of the evidence the defense of insanity. *State v. Myers, supra, State v. Grimm, supra.* This preposition is clearly enunciated in Syllabus Point 4 of our opinion in *Grimm:*

> "A plea of not guilty by reason of insanity is an affirmative defense, and the accused has the burden of proof on the issue of insanity which must be proved by a preponderance of the evidence."

This instruction was properly refused.

In an attempt to define to the jury its role in a case involving the insanity defense and to advise the jury relative to the disposition of the case in the event of a finding of not guilty by reason of insanity, the defendant tendered his Instruction No. 9:

> "You, the jury, are instructed to be mindful of the fact that an acquittal of Luther Milam decided by you, does not mean that he is free to return to society but instead the Court, with the advise (sic) of the Prosecuting Attorney and Defendant's Counsel, will decide the future of Luther Milam. It is not your responsibility to decide what is to be done with Luther Milam, if you find him not guilty."

In *State v. Grimm, supra,* we examined a similar instruction and held that the refusal to give it was proper because the instruction in the form offered would be tantamount to advising the jury of the form of "punishment" to be applied. This line of reasoning has been criticized, *Annot.*, 11 A.L.R.3d 737 (1967), and a number of jurisdictions have held that the defendant is entitled to such an instruction. *See, Schade v. State,* 512 P.2d 907 (Alaska 1973); *People v. Cole,* 382 Mich. 695, 172 N.W.2d

354 (1969). *Contra, State v. Conforti,* 53 N.J. 239, 250 A.2d 6 (1969); *Rollins v. Commonwealth,* 207 Va. 575, 151 S.E.2d 622 (1966). In many of the jurisdictions in which the jury is instructed in detail on the disposition of an accused where he is found not guilty by virtue of insanity, statutory provisions are specific and require the confinement of the defendant to a mental health or mental care facility and no discretion is vested in the trial judge in this regard. *See, e.g., U.S. v. Brawner,* 471 F.2d 969 (D.C. Cir. 1972). Commitment is not mandated in this State. *W. Va. Code,* 27-6A-3, *as amended.*

In view of the peculiar circumstances in this case, *i.e.,* the fact that the jury initially indicated after the case was submitted to it for its consideration that it wished to send the defendant to a "sanitarium" rather than to the penitentiary and sought the court's instructions in this regard, we are inclined to reevaluate our position articulated in *Grimm.* This Court may in the future consider favorably an instruction of the type under scrutiny where it is warranted by the facts of the case. To be properly drawn, such an instruction must accurately specify the procedure established by *W. Va. Code,* 27-6A-3, *as amended,* and *W. Va. Code,* 27-5-1, *et seq., as amended,* governing the disposition of a defendant where the jury has returned a verdict of not guilty by reason of insanity. We note that such an instruction may well prejudice a defendant and this factor should be considered before offering or giving it.

IV

Finally, the defendant contends that when the foreman of the jury returned to the court room and advised the court that the jury desired to send the defendant to an institution, that the jury was in fact expressing its desire to find the defendant not guilty by reason of insanity. There is a strong indication that this characterization is accurate. In view of the fact that other errors require a reversal, we are of the opinion that the relief sought by the appellant in his petition to this Court and requested in the brief filed herein; that the judgment be reversed and the verdict set aside and the

case be remanded to the trial court with the directions to hold an evidentiary hearing on the competency of the accused, and if found competent, to conduct a new trial, is appropriate.

For the reasons stated herein, the judgment of the Circuit Court of Wyoming County is reversed, the verdict of guilty is set aside, and a new trial is awarded the defendant.

*Judgment reversed; new trial granted.*