# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0499** (Jefferson County 04-F-16)

**Roger Riggs,**
**Defendant Below, Petitioner**

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Roger Riggs, by counsel Jason M. Stedman, appeals the Circuit Court of Jefferson County's May 17, 2018, order revoking petitioner's supervised release and sentencing him to forty years of incarceration followed by ten years of supervised release. The State of West Virginia, by counsel Caleb A. Ellis, filed a response. On appeal, petitioner argues that the circuit court abused its discretion when it denied his motion to continue his revocation hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 13, 2004, the circuit court sentenced petitioner to two concurrent terms of not less than ten nor more than twenty years of incarceration for his two convictions of sexual abuse by a parent, guardian, or custodian. The circuit court also sentenced petitioner to twenty-five years of supervised release upon release from prison. On August 8, 2012, petitioner was released from custody and placed on supervised release. Over the next several years, petitioner's supervised release was revoked multiple times and he was either reincarcerated or placed on home incarceration before again being placed on supervised release. Further, the circuit court increased petitioner's initial supervised release term from twenty-five years to fifty years. On April 30, 2018, the State filed its fifth petition to revoke petitioner's supervised release, alleging that he violated his home incarceration approximately 100 times, traveled to areas in close proximity to children, and consorted with a known felon.

On May 15, 2018, the circuit court held a hearing upon the petition to revoke petitioner's supervised release. At the beginning of the hearing, the following exchange took place:

[The Court]: Okay. And, Mr. Stedman, are we in contest?

1

[Petitioner's Counsel]: Your Honor, I was recently appointed at the end of April to this, I'm brand new to this matter. I didn't have any contact information for Mr. Riggs. Today is the first day I've had an opportunity to speak with him. Given that situation, I was able to interview him today. I've learned that he's on some medication and I think I need to look into that to make sure the Court can make the most accurate determination.

So at this point in time I would ask if the Court would consider a continuance to give me more time to consult my client.

. . . .

[The Court]: Okay. What are the medical issues being raised?

[Petitioner's Counsel]: Your Honor. Apparently my client is on some medication, possibly Zoloft as well as some other possible psychiatric medication. I believe that I need to understand to have a better grasp of what that is. I've asked him to tell me who his psychologist is, he doesn't know. So I need to have an opportunity to find out what his course of treatment is and effective medication.

[The State]: Your Honor, I believe that the psychologist he sees is as a part of his sex offender treatment and that would be Heidi Lucas.

. . . .

There might even be an extra list of the medications in the records that were filed with the petition. I believe they were.

. . . .

Ms. Buckley when filing the petition did file attachments of those records as well.

[The Court]: Have you seen those, Mr. Stedman?

[Petitioner's Counsel]: I've been through all of the documents that were provided. I believe I do have them but I need to review them and consider the effects of the medication on Mr. Riggs.

[The Court]: I'm going to inquire of your client, Mr. Stedman. It looks like in the report from Behavioral Health Services in the case that your client is prescribed Naltrexone, Metformin, Meloxicam, Lovastatin, Lisinopril, and Flexitine. Can you inquire if there's anything else that he's prescribed that's not on the list?

. . .

2

[Petitioner]: Zoloft. Yeah.

The circuit court then took a ten-minute recess to familiarize itself with the medications, and directed petitioner to review the psychologist's report from Behavioral Health Services of Shenandoah Community Health previously provided by the State in discovery. After the recess, the circuit court questioned petitioner, under oath, regarding his medications; his general personal information like his age and address; his understanding of his prior convictions in 2004; his understanding of the current proceedings, including the roles of his lawyer, his probation officer, and the prosecutor; his recognition of friends and family members in the audience of the courtroom; his general health care with his therapist and doctor, including his behavioral therapy; and his general orientation of time and place. Upon questioning petitioner, the circuit court remarked that he appeared to "know what he is doing, understands the situation" and that he appeared "cognizant of where he is, time, place." The circuit court concluded that it saw no reason not to go forward with the revocation proceedings, and proceeded with the State's evidence.

Below, the State produced two witnesses. Deputy T.G. Turner of the Berkeley County Sheriff's Department testified as to petitioner's involvement with a felon. Probation Officer Delaine Buckley testified that petitioner had over 100 different violations in his home incarceration report for traveling to locations without prior permission. She further testified that when confronted with the violations, petitioner admitted that his violations were "wrong" and that he would not violate again. Lastly, she testified that petitioner's GPS tracking device placed petitioner near schools, in private residences, and at a hotel, and that he had traveled to these locations without permission.

Petitioner, through counsel, cross-examined the State's two witnesses, made motions and objections, and reviewed the State's home incarceration reports admitted into evidence. In closing, petitioner argued that the State could not prove a willful violation of the home incarceration rules, and that "we might find out from further examination of his treatment records that he might not understand certain consequences of his actions." In response, the circuit court stated, "I went through a fairly detailed list of questions to determine [petitioner's] ability to just understand some conversation. It was clear to me that he understood all of the questions that I asked, birthday, social security, type of car he has, a little bit of family history." Upon finding petitioner competent, the circuit court revoked petitioner's supervised release and sentenced him to forty years of incarceration with ten years of supervised release. On May 17, 2018, the circuit court entered an order reflecting its decision. It is from this order petitioner now appeals.

On appeal, petitioner argues that the circuit court's denial of his requested continuance constituted a denial of his due process rights.[1] In support, he claims that his opportunity to be

---

[1]In support of this assignment of error, petitioner argues that he received ineffective assistance of counsel, yet does not allege any conduct of his counsel to give rise to such a claim. Petitioner assumes that speaking to a client for the first time on the same day as a hearing is per

heard and to present witnesses and documentary evidence was violated when he was not "afforded the opportunity to discuss matters with counsel because there was no client contact until the day of the hearing." Further, petitioner relies upon the principle that counsel must be given sufficient time to adequately prepare to represent clients at trial. Specifically, petitioner argues that counsel needed more time to "gauge [petitioner's] level of understanding and competency" as well as to "discuss [petitioner's] version of events and if [he] had witnesses to call at the hearing."

We have long held that

> [t]he granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made.

Syl. Pt. 1, *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919). In determining whether a trial court has abused its discretion in denying a continuance, the Court has explained that each case "must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syl. Pt. 3, in part, *State v. Bush*, 163 W. Va. 168, 255 S.E.2d 539 (1979). "Where an appellant neither alleges nor demonstrates any actual prejudice as a result of the trial court's refusal to grant a continuance, that refusal will not constitute reversible error." Syl. Pt. 3, *State v. Andritto*, 167 W. Va. 501, 280 S.E.2d 131 (1981).

Regarding petitioner's due process claim, we have held that

_____

se ineffective assistance; however, he fails to elaborate on this argument. Petitioner further fails to identify what actions counsel should or could have taken in light of petitioner's admissions to violating his home incarceration and the State's overwhelming evidence against him. Furthermore, this Court has held that

> [i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). Accordingly, we decline to address petitioner's argument regarding the alleged ineffective assistance of his counsel on appeal.

"[t]he final revocation proceeding required by the due process clause of the Fourteenth Amendment and necessitated by *W.Va.Code,* 62-12-10, *as amended,* must accord an accused with the following requisite minimal procedural protections: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a 'neutral and detached' hearing officer; [and] (6) a written statement by the fact-finders as to the evidence relied upon and reasons for revocation of probation." Syl. pt. 12, *Louk v. Haynes,* 159 W.Va. 482, 223 S.E.2d 780 (1976).

Syl. Pt. 2, *State v. Brown*, 215 W. Va. 664, 600 S.E.2d 561 (2004).

Petitioner's counsel stated that he interviewed petitioner prior to the revocation hearing and reviewed the State's petition and exhibits. The circuit court also held a recess to allow petitioner and his counsel to discuss his case. On appeal, petitioner offers no explanation of how his version of events leading to his revocation were any different than that offered into evidence at the hearing below. Further, petitioner fails to show exactly what he was unable to prove to the circuit court as he makes no suggestions of witnesses or other evidence that should have been presented below. Petitioner also argues that "counsel was unable to consider the possibility of clinical review by an expert to determine competency and the possible level of culpability." However, at the hearing, the circuit court took a short recess to allow petitioner and his counsel more time to discuss his case and to review the psychologist's report to determine if there were any issues regarding his competency. Afterwards, petitioner did not argue that he felt that he was incompetent or that the psychologist's report was incorrect or insufficient in any way. The circuit court questioned petitioner at length to determine if he seemed oriented to time and place, understood the proceedings, and appeared competent. Petitioner answered the questions to the circuit court's satisfaction. Petitioner assumes that his medications automatically bring his competency into question, yet he fails to argue that the circuit court's finding of competency was in any way incorrect. Under these facts, petitioner has simply failed to carry his burden of affirmatively showing actual prejudice resulting from his denied continuance. As such, we find no error in the circuit court's denial of his motion for a continuance.

For the foregoing reasons, we affirm the circuit court's May 17, 2018, order.

Affirmed.

**ISSUED:** January 17, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison