**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**State of West Virginia,
Plaintiff Below, Respondent**

**vs.) No. 19-1157** (Marshall County 19-F-32)

**Charles C.,
Defendant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Charles C.,[1] by counsel Matthew Brummond, appeals the November 22, 2019, order of the Circuit Court of Marshall County imposing concurrent sentences of five to twenty-five years of incarceration for first-degree sexual abuse and ten to twenty years of incarceration for sexual abuse by a person in a position of trust. Respondent State of West Virginia, by counsel Andrea Nease Proper, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, petitioner was indicted in the Circuit Court Marshall County on one count of first-degree sexual abuse and one count of sexual abuse by a person in a position of trust. According to the indictment, on March 12, 2019, petitioner engaged in sexual contact with the victim, P.W., "by rubbing her vagina with his hand on top of her clothing" when petitioner was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

thirty-seven years old and P.W. was nine years old. With regard to count II, the indictment further alleged that petitioner was a person in a position of trust in relation to P.W. due to "having the general supervision of P.W.'s welfare."

Prior to March 12, 2019, petitioner and his wife and stepchildren had been staying at the same house as P.W. and her mother and siblings for several months. Petitioner concedes that P.W.'s mother "had, in the past, asked [p]etitioner and his wife to watch the child[.]" On March 12, 2019, P.W.'s mother believed that petitioner and his wife would be gone from the house; therefore, P.W.'s mother asked two other individuals to come to the house to babysit P.W. while she attended a funeral. However, petitioner and his wife never left the house that day. Petitioner's wife and the two babysitters prepared lunch in the kitchen, while petitioner watched television with the children in the living room. According to petitioner, "[w]hen the meal was ready, one of the babysitters went into the living room and believed she saw [p]etitioner's hand between [P.W.]'s legs." Thereafter, the babysitters contacted law enforcement.

As to petitioner's status as a person in a position of trust, P.W. testified at trial (1) that petitioner and his wife watched her while they were staying at her house; (2) that she was expected to listen to petitioner when he watched her; (3) and that, at the time of the incident, petitioner was the only adult in a room with four children, including a two-year-old. Petitioner testified at trial that there would be as many as ten kids at the house during weekends and that only two of the adults would take care of the children. On cross-examination, petitioner testified that the two adults who would take care of the children were "myself and my wife," but asserted that, while his wife would take care of other people's children, including P.W., he had responsibility only for his stepchildren's welfare. Petitioner stated that the children residing at the house referred to him as "Uncle C[.]" because he "pretty much looked at their mom and their dad as a brother and sister." Petitioner further testified that he was responsible for disciplining "some" of the children—"[j]ust not [P.W. and her siblings]."

At the beginning of its charge to the jury, the circuit court stated that "[a]ll of the instructions should be considered together as a connected series and you are to regard each instruction in light of all others" and that "[t]he instructions, as a whole, are to be regarded as the law applicable to the case." The circuit court further stated that "[t]he presumption of innocence alone is sufficient to acquit a [d]efendant, unless the jurors are satisfied beyond a reasonable doubt, of the [d]efendant's guilt, after careful and impartial consideration of all the evidence of the case." Next, the circuit court instructed the jury that "the burden is always upon the prosecution to prove guilt beyond a reasonable doubt" and "[t]he burden never shifts to the [d]efendant." The circuit court further instructed that,

> if the [j]ury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that the [d]efendant is guilty of the charge, it must acquit. If the [j]ury views the evidence as reasonably permitting either of two (2) conclusions—one (1) of innocence and the other of guilt—the [j]ury must adopt the conclusion of innocence.

The circuit court gave two instructions regarding sexual abuse by a person in a position of

2

trust. The circuit court's first instruction substantially tracked the language of West Virginia Code § 61-8D-5(a) and provided that

> [s]exual [a]buse by a [p]arent, [g]uardian, [c]ustodian or [p]erson in a [p]osition of [t]rust is committed when any parent, guardian, custodian or person in a position of trust of a child under his or her *care, custody or control* engages in or attempts to engage in sexual intercourse or sexual contact with a child under his or her *care, custody or control*, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct.[2]

(emphasis and footnote added). The circuit court's second instruction further provided that

> [b]efore [petitioner] can be convicted of [s]exual [a]buse by a [p]arent, [g]uardian, [c]ustodian or [p]erson in a [p]osition of [t]rust [o]f a [c]hild the State of West Virginia must overcome the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:
>
> 1)      [Petitioner],
> 2)      in Marshall County, West Virginia,
> 3)      on or about the 12th day of March 2019,
> 4)      did engage in sexual contact with P.W., a child as charged in [c]ount II,
> 5)      while being a [p]erson in a [p]osition of [t]rust of said child.

---

[2]West Virginia Code § 61-8D-5(a) provides, as follows:

In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her *care, custody or control*, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her *care, custody or control*, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.

(emphasis added).

3

Finally, the circuit court gave the jury the definition of a "person in a position of trust in relation to a child" set forth in West Virginia Code § 61-8D-1(13), which provides, in pertinent part, that a person in a position of trust includes "someone responsible for the general supervision of a child's welfare." There was no objection raised by petitioner to the circuit court's jury instructions.

After being instructed, the jury deliberated and found petitioner guilty of first-degree sexual abuse and sexual abuse by a person in a position of trust. By order entered on November 22, 2019, the circuit court imposed concurrent sentences of five to twenty-five years of incarceration for first-degree sexual abuse and ten to twenty years of incarceration for sexual abuse by a person in a position of trust. It is this November 22, 2019, sentencing order that petitioner now appeals, arguing that his conviction for sexual abuse by a person in a position of trust must be reversed due to plain error in the jury instructions.

"In reviewing the adequacy of a trial court's choice and selection of jury instructions, we accord the trial court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law." *State v. Derr*, 192 W. Va. 165, 179, 451 S.E.2d 731, 745 (1994). In Syllabus Point 6 of *State v. Milam*, 159 W. Va. 691, 226 S.E.2d 433 (1976), we held that, "[w]hen instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing a jury verdict." As noted above, petitioner did not object to the jury instructions. "[I]n West Virginia criminal cases[,] the sole bases for attacking an unobjected to jury charge are plain error and/or ineffective assistance of counsel." *State v. Miller*, 194 W. Va. 3, 17 n.23, 459 S.E.2d 114, 128 n.23 (1995). In Syllabus Point 7 of *Miller*, we held that plain error consists of: "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 7, 459 S.E.2d at 118.

On appeal, the parties agree that West Virginia Code § 61-8D-5(a) requires that the jury be instructed that the child must be in the defendant's "care, custody, and control" and that the only way petitioner can show that the jury was erroneously instructed is by showing plain error.[3] Petitioner argues that it was plain error for the circuit court to omit "care, custody, and control" from its jury charge. The State counters that petitioner cannot show plain error because—as petitioner acknowledges—the circuit court gave an instruction that tracked the language of West Virginia Code § 61-8D-5(a). Specifically, the State notes that the circuit court's instruction provided that the offense of sexual abuse by a person in a position of trust is committed when a person in a position of trust of a child in that person's "care, custody, and control" sexually abuses that child.

In his reply, petitioner argues that the circuit court erroneously instructed the jury that it could convict him of sexual abuse by a person in a position of trust without finding that P.W. was in his care, custody, and control. We note that—prior to giving the instruction that an offense is committed when a person in a position of trust of a child in his "care, custody, and control" sexually abuses that child—the circuit court instructed the jury as to the presumption of innocence, the

---

[3]Petitioner does not argue that there was ineffective assistance of counsel.

4

State's burden to prove guilt beyond a reasonable doubt, and the duty to acquit petitioner if the jury had a reasonable doubt that petitioner was guilty of the offense. Furthermore, we find that, in P.W.'s testimony, there was evidence on which the jury could find that the child was in petitioner's care, custody, and control in that P.W. testified (1) that petitioner and his wife watched her while they were staying at her house; (2) that she was expected to listen to petitioner when he watched her; (3) and that, at the time of the incident, petitioner was the only adult in a room with four children, including a two-year-old. Accordingly, we find that there was no plain error in the jury instructions affecting either petitioner's substantial rights or the fairness, integrity, or public reputation of the judicial proceedings. *See Miller*, 194 W. Va. at 18, 459 S.E.2d at 129 (stating that "the plain error 'doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result'") (quoting Syl. Pt. 4, in part, *State v. England*, 180 W. Va. 342, 376 S.E.2d 548 (1988) (some internal quotations omitted)). Therefore, we conclude that there is no reason to disturb the jury's verdict finding petitioner guilty of sexual abuse by a person in a position of trust.

For the foregoing reasons, we affirm the circuit court's November 22, 2019, sentencing order imposing concurrent sentences of five to twenty-five years of incarceration for first-degree sexual abuse and ten to twenty years of incarceration for sexual abuse by a person in a position of trust.

Affirmed.

**ISSUED:** October 13, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton